## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BALMUCCINO, LLC, a California Limited Liability Company,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>STARBUCKS CORPORATION, a Washington Corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | CASE NO. 1:24-CV-06214<br><br>COMPLAINT |

## **COMPLAINT**

Plaintiff Balmuccino, LLC complains and alleges as follows:

## **NATURE OF THE ACTION**

1.      This is a civil action in which Plaintiff, Balmuccino, LLC (alternatively, "Balmuccino" or "Plaintiff") alleges it developed a line of coffee-flavored lip balm products which was advanced to coffee giant Starbucks Corporation (alternatively, "Starbucks" or "Defendant") in hopes of developing a mutually beneficial business model that could advance Defendant's products to the financial benefit of both Plaintiff and Defendant.  Balmuccino met with Starbuck's Head of Product Development and Senior Vice President, Mesh Gelman, in New York City in October 2017 ("Meeting") and presented him with a pitch deck and

fully realized prototypes for a lip balm line tailored to Starbucks's coffee products. Despite Balmuccino's detailed disclosure of its product development, Gelman refused to enter into a Non-Disclosure Agreement, essentially promising that Starbucks could be trusted because Starbuck's CEO had facilitated the meeting between Balmuccino's members ("Members") and Gelman.  Soon thereafter, Gelman left Starbucks and Plaintiff was left in limbo as to Starbucks's intentions. Then, in 2018, Balmuccino learned that Starbucks Research and Development personnel had contacted one of Balmuccino's suppliers to create prototypes for Starbucks-branded lip balm-type products and lip balm cases, using specifications the potential manufacturer had received that matched those which Plaintiff had provided to Mr. Gelman during the Meeting.  In 2019, Starbucks ran a promotion to drive business to its retail stores--a disproportionately high share of which were sited in California. That promotion occurred in 2019 and involved four coffee-flavored lipsticks/glosses.  Balmuccino maintains that those products derived from the lip balm products it had introduced to Starbucks at the Meeting.

2.    For its relief, Balmuccino seeks payment deriving from the damages it has and will suffer for both contract and tort-related offenses committed by Starbucks after it misappropriated the intellectual property of Balmuccino.

## THE PARTIES

3.      Plaintiff Balmuccino, LLC ("Plaintiff") is and at all times relevant to this Complaint was a California limited liability company doing business in Los Angeles, California.

4.      Defendant Starbucks Corporation ("Defendant") is and at all times relevant to this Complaint was a Washington corporation which does business in California, and which has a regional office in New York, where the Plaintiff suffered injury.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the Plaintiff and all its members are citizens of a State different from Defendant.

6.      This Court has personal jurisdiction over Defendant because it resides in this State and judicial district.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this State and judicial district and because Defendant is subject to personal jurisdiction in this State and judicial district.

## FACTUAL ALLEGATIONS

8.    Starting about 2016, Plaintiff, through its managing members, began developing a line of coffee-flavored lip balms.

9.    After investing substantial time and resources, including financial resources, to develop and perfect its concept and product, Plaintiff sought out another entity with which it could manufacture and sell the coffee-flavored lip balms, for example through a joint venture partnership.

10.    One of Plaintiff's managing members, Samantha Lemole, was a sister-in-law of Mehmet Cengiz Öz, known professionally as "Dr. Öz."

11.    Ms. Lemole informed Dr. Öz about Plaintiff's search for a partner in or about June 2017.

12.    Dr. Öz then contacted Defendant's CEO, Howard Schultz, to tell him of Plaintiff's fully-realized concept and product that could be a promising joint venture for Defendant.

13.    After Dr. Öz notified him of Plaintiff's product, Mr. Schultz instructed Dr. Öz to have Ms. Lemole and Plaintiff's other members to directly contact Defendant's Head of Product Development and Senior Vice President, Mesh Gelman.

14.    Accordingly, on or about October 19, 2017, Plaintiff's co-founder and member, Meredith Scott Lynn, along with Plaintiff's lead chemist and product

manufacturer, Vince Spinnato, Plaintiff's branding director, Faith Miller, and Ms. Lemole flew from their respective homes in California to meet Mr. Gelman and his assistant, Peter Ginsburg, in Defendant's New York corporate offices for a pitch meeting (alternatively, "Meeting").

15.    During the Meeting, which Starbucks's personnel arranged to be held in New York, Plaintiff's personnel presented Mr. Gelman with a pitch deck along with fully realized prototypes for Plaintiff's product line, which had been designed specifically for Defendant.

16.    During the Meeting, Plaintiff specifically requested that Mr. Gelman sign a Non-Disclosure Agreement (alternatively, "NDA"), but Mr. Gelman deflected this request and instead stated that the Meeting and the items discussed therein were entirely confidential and that the relationship between Mr. Schultz and Dr. Öz, who had brokered the Meeting, should afford Plaintiff the necessary comfort and protections Plaintiff was seeking via the NDA,

17.    For over an hour during the Meeting, Mr. Gelman extensively questioned Plaintiff's team, especially chemist Mr. Spinnato about Plaintiff's concepts and products, the creation process of lip balms, the different flavor possibilities, and other detailed inquiries.

18.    Chemist Spinnato discussed details of the entire process, including the names and locations of the material suppliers and manufacturers that had been

involved during the nearly two-year development process of Balmuccino's lip balm products.

19.    During Mr. Gelman's questioning of the Balmuccino team, Mr. Gelman's assistant, Mr. Ginsberg, took copious notes while Mr. Gelman listened intently.

20.    At the Meeting's end, Mr. Gelman asked if he could hold on to the pitch deck so that he could run the idea "up the flagpole" and explore the possibility of a partnership or joint venture moving forward.

21.    Two weeks after the Meeting, Mr. Gelman emailed Ms. Lemole and Ms. Scott Lynn stating he was leaving Starbucks to start his own consulting business – clearly an exit that was in place before the Meeting.  He did not discuss the status of the product pitch that had taken place during that meeting.

22.    Thereafter, in 2018, Plaintiff was shockingly notified that Defendant had reached out to a supplier Mr. Spinnato had been working with to inquire about coffee-flavored lip balms.

23.    More particularly, as to this 2018 contact with Balmuccino's supplier, Plaintiff was notified that employees within Defendant's Research and Development team had requested the creation of prototypes for Starbucks-branded lip balm and lip balm cases. Plaintiff was further informed that the specifications

the potential manufacturer had received for these prototypes matched those Plaintiff had given Mr. Gelman during the October 19, 2017 Meeting.

24. In approximately April 2019, Starbucks announced the launch of a kit of four liquid lipsticks/glosses called "The S'mores Frappuccino Sip Kit" ("Sip Kit"). The Sit Kit was created to celebrate the return of the Starbucks S'mores Frappuccino and included four shades (three nude-brown-caramel shades, and one iridescent white shade) called Chocolicious Bliss, Marshmallow Glow, Campfire Spark, and Graham Glam.

25. The Sip Kit promotion reached California where nearly ten percent of Starbucks's retail stores are sited and where the Balmuccino team resided and operated.

26. In effect, after having dissuaded Plaintiff from insisting on an NDA, Defendant stole Plaintiff's product and began to manufacture and promote it to help drive sales, but without compensating Plaintiff.

27. In particular, Plaintiff had delivered a fully realized product concept to Defendant in a branded, pocketable lip balm delivery mechanism, along with fully-formulated samples that smelled and tasted like the flavors of Defendant's beverages. After the Meeting, Defendant improperly misappropriated this confidential information.

28.    The fully developed concept misappropriated by Defendant reflects the huge investment of time, energy and funds Plaintiff had expended to develop the product and the prototypes that Starbucks unceremoniously took for itself.  It is equally clear that Defendant misappropriated the organic entrepreneurship, creativity, hard work, and invention demonstrated by Plaintiff's members at the New York Meeting and sought to monetize Plaintiff's creation without due compensation to Balmuccino--all to Balmuccino's injury.

## PROCEDURAL POSTURE (EQUITABLE TOLLING)

29.    Plaintiff timely sued Starbucks on October 18, 2019 in the California Superior Court for the County of Los Angeles, Case Number 19STCV37444 ("Case").  Service of the Summons and Complaint on Starbucks occurred one week later on October 25, 2019.

30.    Starbucks has previously sworn in a Declaration under oath that it operates over 9% of its retail stores in California.

31.    Plaintiff is a California entity, and all four of its Members were California residents when the Complaint was filed in California state court and when the Meeting in New York occurred.

32.    Substantially all of Balmuccino's product research and development occurred in California, and the vast majority of communications with Defendant flowed to and from California.

33.     Despite the connections of Balmuccino and its principals to California, the California Superior Court found it had no personal jurisdiction over Defendant and entered a Notice of Entry of Dismissal on July 17, 2020.

34.     On September 10, 2020, Plaintiff timely filed a Notice of Appeal with the California Court of Appeal.  The case remained in that Court from September 10, 2020 to October 26, 2022.

35.     On August 24, 2022, the California Court of Appeal issued its opinion, which affirmed the Superior Court's July 17, 2020 dismissal.  The Court of Appeal issued its remittitur on October 26, 2022, thereby dismissing the Appeal as of that date.

36.     On October 21, 2022, five days before the California Court of Appeal dismissed the appeal, Plaintiff refiled the present case in the federal district court for the Western District of the state of Washington ("District Court"), Case No. 2:22-cv-1501-TLF.  As such, Plaintiff had an active action against Defendant from October 18, 2019 to the time of filing with the District Court, so that Defendant continually had timely notice of Plaintiff's claims throughout this period.  In turn, Defendant suffered no prejudice as to the gathering of evidence, which evidence has never changed, as Plaintiff had continuously pursued its claims.

37.    Plaintiff filed in Washington District Court because that is the district where Defendant is headquartered.

38.    On July 26, 2023, the District Court granted Starbucks's Motion to Dismiss ("Motion to Dismiss") the First Amended Complaint, without leave to amend.  This was based on the District Court's assumption that any conflict of law favored Washington state over California on Plaintiff's contract and tort-related claims.

39.    In granting the Motion to Dismiss, the District Court also found that equitable tolling was inapplicable because, *inter alia,* Washington state law did not recognize such tolling absent a showing of bad faith, deception or false assurances by the defendant.  In this regard, the District Court found that Washington's test for equitable tolling contains a "bad actor" requirement that is not included in California's test for equitable tolling.

40.    Plaintiff noticed an appeal of the District Court's ruling on the Motion to Dismiss on or about August 24, 2023 and filed its Opening Brief on or about November 22, 2023.

41.    Like Washington, New York State recognizes equitable tolling as an exceptional remedy.  However, New York also recognizes that one of those exceptions is when a party misfiles in the wrong forum, and, as here, a court rules that it lacks personal jurisdiction.

42.    As noted above, Plaintiff has actively pursued its litigation against

Defendant from October 18, 2019 to the present.  As such Defendant has

continually known of Plaintiff's continuing and ongoing claims.  Therefore,

Defendant has no viable claim of prejudice as to the relevant evidence, in that the

evidence has remained unchanged throughout Plaintiff's pursuit of relief and

recompense over Starbucks's misuse of Balmuccino's product information.

**43.**    Finally, Plaintiff's original pursuit of its legal remedies within its

home state of California constituted good faith and reasonable conduct given that

California was the locus of Balmuccino's operations and the residence of its

members at the time of the Meeting.  For all such reasons, it is equitable to toll the

statute of limitations for the time the California action was pending, from

October 18, 2019 to October 26, 2022.

## Causes of Action

### COUNT 1

### Breach of Implied-in-Fact Contract

44.    Plaintiff incorporates herein by specific reference, as though fully set

forth, the allegations in all preceding paragraphs of this Complaint.

45.    Plaintiff invested substantial time and resources in developing a fully

realized concept and line of coffee-flavored lip balms.

46.     At the Meeting held on October 19, 2017, Plaintiff  met with Defendant's agents to discuss a joint venture associated with production of the coffee-flavored lip balms developed by Plaintiff.

47.     During the Meeting and in conversations preceding the Meeting, it was understood and otherwise implied that if Defendant used Plaintiff's ideas and concepts associated with the coffee-flavored lip balms, Plaintiff would be duly compensated and given proper credit.

48.     Also during the Meeting, Plaintiff expressly asked that Defendant's agents execute a Non-Disclosure Agreement.  Defendant's agents expressly represented and also implied through their actions that Defendant could be trusted to abide by the terms of an NDA, even without actually signing one.

49.     During the Meeting, Plaintiff afforded Defendant substantial information about its coffee-flavored lips balms, including a pitch deck and fully realized prototypes for the Plaintiff's product line, which had been designed specifically for Defendant.

50.     At all times relevant herein, Defendant was aware of the implied terms and conditions that informed Plaintiff's provision of its coffee-flavored lip balms and concepts to Defendant; following industry custom and practice, Defendant agreed to abide by them.

51.    Plaintiff complied with all of the terms and conditions of the implied contract between Plaintiff and Defendant, to the extent such terms and conditions have not been waived or excused by Defendant's conduct.

52.    In 2019, Defendant breached the implied contract by, *inter alia*, releasing coffee-flavored lip products akin to Plaintiff's lip balms without Plaintiff's consent and without compensating Plaintiff.

53.    At the time Defendant breached the implied contract, it was aware such breach would injure Plaintiff and that Plaintiff would suffer consequential damages.  As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in an indeterminate amount, but not less than $75,000, and according to proof at the time of trial.

## COUNT 2

### Breach of Oral Contract

54.    Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in all preceding paragraphs of this Complaint.

55.    Plaintiff invested substantial time and resources into developing its eventually fully realized concept and line of coffee-flavored lip balms.

56.    During the New York Meeting, Plaintiff shared substantial information with Defendant's agents that was specific to Plaintiff's coffee-flavored

lips balms, including a pitch deck and fully realized prototypes for the Plaintiff's product line, and which had been designed specifically for Defendant.

57.    At all relevant times herein, Defendant knew of the express terms and conditions of Plaintiff's sharing its ideas and concepts for coffee-flavor lip balms, and, following industry custom and practice, Defendant agreed to abide by them.

58.    Plaintiff complied with all the terms and conditions of the oral contract between Plaintiff and Defendant, to the extent such terms and conditions have not been waived or excused by Defendant's conduct.

59.    In 2019, Defendant breached its oral contract with Plaintiff by, among other things, releasing products based on Plaintiff's coffee-flavored lip balms without Plaintiff's consent and without compensating Plaintiff.

60.    When Defendant breached the oral contract in 2019, it knew such breach would injure Plaintiff and that Plaintiff would suffer consequential damages.

61.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in a not yet been determined amount, but not less than $75,000, and according to proof at the time of trial.

## COUNT 3

### Breach of Confidence

62.     Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in all preceding paragraphs of this Complaint.

63.     Plaintiff invested substantial time and resources in developing an eventually fully realized concept and line of coffee-flavored lip balms.  Plaintiff provided Defendant with substantial information associated with this line of coffee-flavored lips balms, including a pitch deck and fully realized prototypes for Plaintiff's product line, designed specifically for Defendant.

64.     When Plaintiff disclosed this information to Defendant, Plaintiff did so based upon the trust it placed in Defendant to treat its ideas and work product as proprietary and confidential and to be used by Defendant only to evaluate Plaintiff's ideas or to otherwise develop Plaintiff's ideas as a joint venture. Plaintiff reasonably and justifiably expected that Defendant would not disclose or otherwise use Plaintiff's ideas and work product unless such disclosure and utilization was on Plaintiff's behalf and with proper compensation.

65.     Defendant was aware of its obligation to limit the use of Plaintiff's ideas and work product to only evaluate Plaintiff's ideas or to otherwise develop those ideas as a joint venture with Plaintiff and with just compensation to Plaintiff. Defendant's intentional use of Plaintiff's ideas and work product to develop and

distribute its own branded lip balm-type products in 2019 for its own pecuniary advantage constitutes a breach of the confidential relationship between Plaintiff and Defendant.

66.    As a direct and proximate result of Defendant's wrongful conduct in breaching its confidential relationship with Plaintiff, Plaintiff has been damaged in an amount which has not yet been determined, but not less than $75,000, and according to proof at the time of trial.

67.    Defendant's wrongful conduct was done with the intent to vex and injure Plaintiff, with malice and conscious disregard for Plaintiff's rights and pecuniary well-being. Accordingly, Plaintiff is entitled to an award of punitive or exemplary damages sufficient to deter Defendant from engaging in such conduct in the future.

## COUNT 4

**Trade Secret Misappropriation Pursuant to the California**

**Uniform Trade Secret Act  (Civ. Code, §§ 3426-3426.11)**

68.    Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in all preceding paragraphs of this Complaint.

69.    Plaintiff invested substantial time and resources in developing an eventually fully realized concept and line of coffee-flavored lip balms, and therefore was the owner of such information.  All such information was unknown

to the public and known only to Balmuccino's Members and their suppliers/agents, all of whom understood that such information should not be disseminated unless for business purposes and to persons who understood the confidentiality of such information. Furthermore, such information had economic value in that it constituted the information required to create Plaintiff's products, as well as the information that would allow for the creation of a competing product, as well as the reasons why Plaintiff's products had economic value in the existing marketplace. Accordingly, such information was Plaintiff's own trade secret at the time Balmuccino's Members spoke to, and met with, Defendant at the Meeting in 2017.

70.    With the disclosed intent of creating a joint venture to manufacture and sell a line of coffee-flavor lip balms, Plaintiff provided Defendant with substantial and secret information associated with this line of lip balms, including a pitch deck, fully realized prototypes, identification of suppliers and materials, explanations of the results of research and development efforts, trial and error results, marketing ideas, market data, all for the Plaintiff's product line.

71.    Rather than use the aforementioned information for its intended purpose – i.e. to assess the potential for a joint venture or to actually begin working towards the manufacturing of the coffee-flavored lip balms with just compensation to Plaintiff, Defendant acquired and improperly used this information to

manufacture its own line of coffee-flavored lip balm-type products in or about 2019 and without compensating Plaintiff.

72.    As a direct and proximate result of Defendant's misappropriation of the aforementioned information, Plaintiff has been damaged in an amount which has not yet been determined, and according to proof at the time of trial, but not less than $75,000.

73.    Defendant's wrongful conduct was willful and malicious and done with the intent to vex and injure Plaintiff, and with conscious disregard for Plaintiff's rights and pecuniary well-being.  Accordingly, and pursuant to law, and in addition to any other compensation due it, Plaintiff is entitled to an award of punitive or exemplary damages up to twice the amount of Plaintiff's actual loss.

## COUNT 5

### Trade Secret Misappropriation

74.    Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in all preceding paragraphs of this Complaint.

75.    During the Meeting, Plaintiff provided information to Defendant that Defendant knew was proprietary and which could not be used or exploited for Defendant's commercial development or purposes in the absence of a joint venture or similar agreement with Plaintiff.

76.    Defendant further knew that the information Plaintiff shared with Defendant at the Meeting gave rise to a duty on Starbucks's part to maintain the secrecy of such information, especially after Defendant misrepresented to Plaintiff that the Non-Disclosure Agreement Plaintiff had requested was unnecessary.  In so doing, Defendant used improper means to acquire knowledge of Plaintiff's trade secrets.

77.    Defendant also knew that the information it acquired from Plaintiff during the Meeting had independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use; and that Plaintiff had sought Defendant's assurance to maintain the secrecy of such information, which assurance Defendant afforded Plaintiff before Starbucks misappropriated that information for its own exploitation.

78.    Defendant's wrongful conduct was willful and malicious and done with the intent to vex and injure Plaintiff, and with conscious disregard for Plaintiff's rights and pecuniary well-being.  Accordingly, and pursuant to New York's misappropriation law, Plaintiff is entitled to an award of punitive or exemplary damages up to twice the amount of Plaintiff's actual loss, as provided by law and which loss is not less than $75,000, and according to proof at the time of trial.

## COUNT 6

## Defend Trade Secrets Act (18 U.S.C.A. § 1836)

79.     Plaintiff incorporates herein by specific reference, as though fully set forth, the allegations in all preceding paragraphs of this Complaint.

80.     Defendant knew that the information it elicited from Plaintiff at the Meeting was a trade secret, and the disclosure of which would or could harm Plaintiff economically.

81.     Defendant misappropriated the proprietary information it elicited from Plaintiff at the Meeting to advance its own commercial purposes, and promoted Starbucks's products based on that proprietary information without the knowledge, consent or permission of Plaintiff and all to the financial detriment and/or potential financial detriment of Plaintiff.

82.     Plaintiff further maintains that it took reasonable steps to keep the misappropriated information secret and that Starbucks refused to afford Plaintiff a requested Non-Disclosure Agreement, so as to deprive Plaintiff of the economic value or potential economic value of its products.

83.     Defendant's wrongful conduct was willful and malicious and done with the intent to vex and injure Plaintiff, and with conscious disregard for Plaintiff's rights and pecuniary well-being.  Accordingly, and pursuant to 18 U.S.C. § 1836(b)(3)(C)-(D), Plaintiff is therefore entitled to an award of punitive or

exemplary damages up to twice the amount of Plaintiff's actual loss, as well as an award of attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A.    A declaration that Defendant's conduct violates the causes of action referenced herein;

B.    An order finding in favor of Plaintiff on all counts asserted herein;

C.    For compensatory, statutory, and punitive damages as permitted by law and as determined by the Court and/or jury;

D.    For prejudgment interest on all amounts awarded;

E.    For an order of restitution and all other forms of equitable monetary relief;

F.    For injunctive relief as pleaded or as the Court may deem proper; and

G.    For an order awarding Plaintiff their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to *Federal Rule of Civil Procedure 38(b)*, Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

DATED: August 16, 2024                    **MARTORELL LAW APC**


By:  <u>S/ Eduardo Martorell</u>
     Eduardo Martorell (*pro hac vice*
     forthcoming)
     MARTORELL LAW APC
     6100 Center Drive, Ste. 1130
     Los Angeles, CA 90045
     Tel: (323) 840-1200
     Fax: (323) 840-1300
     Email: EMartorell@Martorell-
     Law.com