**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BALMUCCINO, LLC, a California Limited Liability Company, | CASE NO. 1:24-CV-06214-KPF |
| Plaintiff, | |
| -against- | |
| STARBUCKS CORPORATION, a Washington Corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................ 3

   A. Balmuccino's Factual Allegations ............................................................................... 3

   B. Procedural History ......................................................................................................... 5

      1. The California Litigation ............................................................................................ 5

      2. The Washington Litigation ....................................................................................... 6

III. LEGAL STANDARD ..................................................................................................... 7

IV. ARGUMENT .................................................................................................................... 8

   A. The Court lacks personal jurisdiction over Starbucks. ......................................... 8

      1. Starbucks is not subject to general personal jurisdiction in New York. ........................ 9

      2. Starbucks is not subject to specific personal jurisdiction in New York. ..................... 10

      3. Exercise of personal jurisdiction over Starbucks does not comport with due process. 16

      4. Balmuccino is not entitled to jurisdictional discovery.................................................. 17

   B. Balmuccino's Complaint is precluded by *res judicata* and collateral estoppel. ............... 17

   C. Balmuccino's claims are time-barred. ........................................................................ 23

      1. Washington's three-year statute of limitations applies to Balmuccino's contract claims. ....................................................................................................................................23

      2. Balmuccino's other state law claims are barred under either Washington or New York law.....................................................................................................................................25

      3. Balmuccino's federal trade secret claim cannot be tolled. ........................................... 26

   D. Balmuccino fails to state a claim. ............................................................................... 26

      1. Balmuccino fails to allege that it possessed a trade secret........................................... 27

      2. Balmuccino fails to allege Starbucks misappropriated Balmuccino's trade secret. ...... 29

V. CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*24 Seven, LLC v. Martinez,*
  2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ........................................................ 29

*Acoustical Design, Inc. v. Control Elecs. Co.,*
  1987 WL 8066 (E.D.N.Y. Feb. 24, 1987)............................................................ 13

*Al-Ahmed v. Twitter, Inc.,*
  553 F. Supp. 3d 118 (S.D.N.Y. 2021)............................................................. 9, 10

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.,*
  457 F. Supp. 3d 401 (S.D.N.Y. 2000).................................................................. 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................ 8

*Balmuccino, LLC v. Starbucks Corp.,*
  2022 WL 3643062 (Cal. Ct. App. Aug. 24, 2022)........................................... 6, 10

*Balmuccino, LLC v. Starbucks Corp.,*
  2023 WL 4761447 (W.D. Wash. Jul. 26, 2023) .......................................... *passim*

*Balmuccino, LLC v. Starbucks Corp.,*
  2024 WL 4262805 (9th Cir. Sept. 23, 2024) ........................................ 7, 20, 21, 23

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................. 8

*Best Van Lines, Inc. v. Walker,*
  490 F.3d 239 (2d Cir. 2007)............................................................................... 17

*BGC Partners, Inc. v. Avison Young (Canada) Inc.,*
  46 Misc. 3d 1202, 2014 WL 7201754 (Sup. Ct. N.Y. 2014)............................... 12

*Big Vision Private Ltd. v. E.I. Dupont De Nemours & Co.,*
  1 F. Supp. 3d 224 (S.D.N.Y. 2014) ..................................................................... 30

*Bohn v. Bartels,*
  620 F. Supp. 2d 418 (S.D.N.Y. 2007).............................................................. 8, 16

*Boston Tea Co., LLC v. Bay Valley Foods, LLC,*
  2019 WL 4747395 (S.D.N.Y. Sept. 27, 2019)..................................................... 15

508498047.9

*Bristol-Meyers Squibb Co. v. Superior Court,*
    582 U.S. 255 (2017) ................................................................................................ 16

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................................................ 16

*Byrd v. Town of DeWitt,*
    698 F. Supp. 3d 379 (N.D.N.Y. 2023) .................................................................... 18

*Campbell v. Fernandez,*
    473 P.3d 675 (Wash. Ct. App. 2020) ...................................................................... 19

*Carter v. MultiCare Health Sys.,*
    553 P.3d 98 (Wash. Ct. App. 2024) ........................................................................ 19

*Cary Oil Co. v. Mg Refining and Mktg., Inc.,*
    90 F. Supp. 2d 401 (S.D.N.Y. 2000) ...................................................................... 26

*Clemmons v. Upfield US Inc.,*
    667 F. Supp. 3d 5 (S.D.N.Y. 2023) ........................................................................ 14

*Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda,*
    572 F.3d 93 (2d Cir. 2009) ...................................................................................... 18

*Conopco, Inc. v. Roll Int'l,*
    231 F.3d 82 (2d Cir. 2000) ........................................................................................ 8

*Cotiviti, Inc. v. Deagle,*
    501 F. Supp. 3d 243 (S.D.N.Y.2020) ...................................................................... 23

*Donner v. DER SPIEGEL Gmbh & Co.,*
    -- F. Supp. 3d --, 2024 WL 4035215 (S.D.N.Y. Sept. 4, 2024) .............................. 17

*Evans v. Heimann,*
    2022 WL 101953 (W.D. Wash. Jan. 11, 2022) ....................................................... 19

*Foros Advisors LLC v. Digital Globe, Inc.,*
    333 F. Supp. 3d 354 (S.D.N.Y. 2018) .................................................................... 14

*Friedman v. Bloomberg,*
    884 F.3d 83 (2d Cir. 2017) ........................................................................................ 7

*Goulsby v. Waddington,*
    2008 WL 2996999 (W.D. Wash. Aug. 1, 2008) ..................................................... 19

iii

*HC2, Inc. v. Delaney*,
 510 F. Supp. 3d 86 (S.D.N.Y. 2020)..............................................................14, 15

*In re Mirena IUD Prods. Liab. Litig.*,
 2015 WL 5037100 (S.D.N.Y. Aug. 26, 2015)............................................17

*Inv. Sci., LLC v. Oath Holdings Inc.*,
 2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021)............................................29

*Jinno Int'l Co. v. Premier Fabrics, Inc.*,
 2013 WL 4780049 (S.D.N.Y. May 24, 2013) ......................................14, 28

*Koulkina v. City of New York*,
 559 F. Supp. 2d 300 (S.D.N.Y. 2008)........................................................7

*Mercator Corp. v. Windhorst*,
 159 F. Supp. 3d 463 (S.D.N.Y. 2016)......................................................14

*Newmont USA Ltd. v. Am. Home Assurance Co.*,
 2010 WL 11508326 (E.D. Wash. Jul. 27, 2010)......................................22

*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institución De Banca Múltiple*,
 92 F.4th 450 (2d Cir. 2024) ........................................................................8

*Pauwels v. Deloitte LLP*,
 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020)......................................28, 30

*Pederson v. Potter*,
 11 P.3d 833 (Wash. Ct. App. 2000)..........................................................21

*Penner v. Cent. Puget Sound Reg'l Transit Auth.*,
 525 P.3d 1010 (Wash. Ct. App. 2023)......................................................19

*Peralta v. St. Lukes Roosevelt Hosp.*,
 2015 WL 3947641 (S.D.N.Y. Jun. 26, 2015) .............................................8

*Perrin v. Pearlstein*,
 314 F.2d 863 (2d. Cir. 1963)....................................................................24

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
 66 F.4th 365 (2d Cir. 2023) ......................................................................17

*S.L. Kaye Co., Inc. v. Dulces Anahuac, S.A.*,
 524 F. Supp. 17 (S.D.N.Y. 1981) ...............................................................9

508498047.9

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ............................................................................... 17, 18

*Stinnett v. Delta Air Lines, Inc.*,
    803 Fed. App'x 505 (2d Cir. 2020) ........................................................ 17

*V Cars, LLC v. Israel Corp.*,
    902 F. Supp. 2d 349 (S.D.N.Y. 2012) .................................................... 11

*Webb v. Greater N.Y. Auto Dealers Ass'n, Inc.*,
    144 A.D.3d 1134 (2d Dep't 2016) .......................................................... 18

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021) .................................................. 27, 29

**Statutes**

18 U.S.C. § 1839 .......................................................................................... 29

N.Y C.P.L.R. § 214 ...................................................................................... 25

N.Y. C.P.L.R. § 213 ..................................................................................... 24

N.Y. C.P.L.R. § 302 ................................................................................ passim

Wash. Rev. Code 19.108.060 ....................................................................... 25

Wash. Rev. Code 4.16.080 ....................................................................... 24, 25

508498047.9

# I.    PRELIMINARY STATEMENT

This is the third lawsuit, in over five years, that Balmuccino, LLC ("Balmuccino") has filed against Starbucks Corporation ("Starbucks") based on the same alleged misconduct: that Starbucks purportedly stole Balmuccino's concept for a coffee-flavored lip balm. Balmuccino alleges that in October 2017, Balmuccino and Starbucks representatives met for a pitch meeting, lasting approximately one hour, for Balmuccino's lip balm product. Shortly after, the Starbucks representative that met with Balmuccino left Starbucks, and the parties had no further contact. In April 2019, Starbucks launched a promotional kit (the "Sip Kit") of four s'mores flavored lip *glosses* (not lip balms). Starbucks submitted evidence in prior litigation that a Starbucks team in Seattle developed the Sip Kit concept; that team had never heard of Balmuccino; and Starbucks gave away Sip Kits as part of a larger prize package to only ten winners of a four-day promotion; and that Starbucks never sold the Sip Kit to anyone.

Balmuccino initially filed suit against Starbucks in California in October 2019. When the California trial court dismissed Balmuccino's claims for lack of personal jurisdiction, Balmuccino decided that, rather than refile in the proper forum, it would wait more than two years while it appealed the trial court's decision. In August 2022, the California appellate court affirmed the decision, and in October 2022, Balmuccino refiled its lawsuit in the Western District of Washington. By that time, however, the three-year statute of limitations on all of Balmuccino's claims had run, and the district court dismissed Balmuccino's complaint as time-barred. In September 2024, the Ninth Circuit affirmed. Now, Balmuccino seeks to try its luck for the third time in this Court. Balmuccino's Complaint is defective for numerous independent reasons, both procedural and substantive, and should be dismissed with prejudice.

First, this Court lacks personal jurisdiction over Starbucks. There is no general personal jurisdiction because Starbucks, a Washington corporation, is not "at home" in New York. There is no specific personal jurisdiction over Balmuccino's trade secret misappropriation claims because the New York meeting was an exploratory meeting that does not rise to the level of "transacting business" in New York, and any alleged misappropriation occurred *after* the meeting and outside of New York. There is no specific personal jurisdiction over Balmuccino's contract and breach of confidence claims because Balmuccino fails to allege the New York meeting plausibly formed a contract or confidential relationship, and therefore there are no forum ties to these causes of action.

Second, Balmuccino's claims are barred by *res judicata* and collateral estoppel. The law of the state that rendered the original judgment, Washington, applies to this analysis. Under Washington law, a dismissal based on statute of limitations is a judgment on the merits and has *res judicata* effect, thereby barring this identical action. Further, collateral estoppel precludes relitigation of the Western District of Washington and Ninth Circuit's prior determination that Washington law applies to Balmuccino's claims, and those claims are time-barred.

Third, even if this Court did not find Balmuccino's claims precluded, and undertook an independent conflict of law analysis, it would still reach the same conclusion that Balmuccino's claims are time-barred. Applying New York conflict of law principles, Washington law applies to Balmuccino's contract claims because there is an actual conflict between New York and Washington law (New York has a longer statute of limitations), and Washington is the "center of gravity" for the contract claims. Starbucks is domiciled in Washington, and performance of any purported contract (i.e., the development and creation of the lip balm) would occur in Washington. Under Washington law, Balmuccino's contract claims are time-barred. Next, there is no need to perform a conflict of law analysis on Balmuccino's remaining claims because under any of the

potentially applicable laws, the relevant statute of limitations is three years and equitable tolling is not available. Like Washington, New York does not permit equitable tolling of state law claims absent a showing of bad faith by the defendant. Moreover, Balmuccino is not entitled to equitable tolling of its federal trade secret claim based on the theory that it filed in the wrong forum because Balmuccino asserted this claim for the first time in the Western District of Washington.

Fourth, Balmuccino fails to state any claim upon which relief can be granted. Balmuccino fails to plausibly allege the parties formed either a contract or a confidential relationship based on the short pitch meeting. Balmuccino also fails to allege it owned a trade secret, that Starbucks used the trade secret to create its entirely different lip gloss product, or that Starbucks did so through improper means.

## II.     FACTUAL BACKGROUND

### A.     Balmuccino's Factual Allegations[1]

According to the Complaint, Balmuccino is a California limited liability company doing business in Los Angeles, California. Compl. ¶ 3. Starbucks is a Washington corporation "which does business in California, and which has a regional office in New York, where the Plaintiff suffered injury." *Id.*

In approximately 2016, Balmuccino began developing a line of coffee-flavored lip balms. *Id.* ¶ 8. One of Balmuccino's managing members is Samantha Lemole, sister-in law to Mehmet Cengiz Öz, professionally known as "Dr. Öz." *Id.* ¶ 10. In 2017, Ms. Lemole informed Dr. Öz that Balmuccino was searching for a partner to manufacture and sell its coffee-flavored lip-balm product. *Id.* ¶ 11. Dr. Öz contacted Howard Schultz, then-CEO of Starbucks, regarding the product.

---

[1] Although Starbucks denies many of Balmuccino's allegations, it assumes them as true solely for purposes of this motion to dismiss.

*Id.* ¶ 12. Mr. Schultz instructed Dr. Öz to have Ms. Lemole reach out directly to the then-Head of Product Development and Senior Vice President of Starbucks, Mesh Gelman. *Id.* ¶ 13.

On or about October 19, 2017, Ms. Lemole and other Balmuccino representatives met with Mr. Gelman and his assistant at the New York corporate offices of Starbucks for a pitch meeting. *Id.* ¶ 14. During this meeting, Balmuccino presented a pitch deck along with prototypes of Balmuccino's product, "designed specifically for [Starbucks]." *Id.* ¶ 15. Balmuccino asked Mr. Gelman to sign a nondisclosure agreement, but Mr. Gelman "deflected," stating the meeting was "entirely confidential" and the relationship between Mr. Schultz and Dr. Öz "should afford [Balmuccino] the necessary comfort and protections [Balmuccino] was seeking" via the non-disclosure agreement. *Id.* ¶ 16. The pitch meeting lasted "over an hour." *Id.* ¶ 17. During the meeting, Mr. Gelman and the Balmuccino representatives discussed topics including Balmuccino's "concepts and products," "the creation process of lip balms," "the different flavor possibilities," and Balmuccino's suppliers and manufacturers. *Id.* ¶¶ 17–18. At the end of the meeting, Mr. Gelman asked to "hold on" to the pitch deck so he could run the idea "up the flagpole." *Id.* ¶ 20. The Complaint alleges no further contact with New York.

Two weeks later, Mr. Gelman emailed Ms. Lemole to inform her he was leaving Starbucks. *Id.* ¶ 21. He did not discuss the status of the Balmuccino product pitch in his email. *Id.* The Complaint does not allege Balmuccino and Starbucks had any further discussions.

At some point in 2018, Balmuccino learned that Starbucks had reached out to one of Balmuccino's suppliers to inquire about prototypes for Starbucks-branded, coffee-flavored lip balms. *Id.* ¶¶ 22–23. Balmuccino was "informed that the specifications the potential manufacturer had received for these prototypes matched those [Balmuccino] had given Mr. Gelman during the October 19, 2017 Meeting." *Id.* ¶ 23.

In April 2019, Starbucks announced the launch of the S'mores Frappuccino Sip Kit ("Sip Kit"), a promotional item created to celebrate the return of the Starbucks S'mores Frappuccino. *Id*. ¶ 24. The Sip Kit included four S'mores-flavored lip *glosses*. *Id.* This "promotion reached California where nearly ten percent of Starbucks's retail stores are sited and where the Balmuccino team resided and operated." *Id*. ¶ 25. The Complaint does not allege that the Sip Kit was created, developed, fabricated, launched, or even distributed in New York. According to Balmuccino, Starbucks "stole" Balmuccino's lip balm product when it "began to manufacture and promote [the Sip Kit] to help drive sales, but without compensating [Balmuccino]." *Id*. ¶ 26.

## B.    Procedural History

### 1.    *The California Litigation*

On October 18, 2019, Balmuccino brought contract, breach of confidence, trade secret misappropriation claims against Starbucks in California state court. Declaration of Joanna Diakos in Support of Motion ("Diakos Decl.") Ex. 1. On December 10, 2019, Starbucks moved to quash service of the summons for lack of personal jurisdiction. *Id.* Ex. 2. In support of its motion to quash, Starbucks submitted evidence related to the development of the Sip Kit at the center of Balmuccino's claims. *Id.* Exs 3, 4. This evidence showed that Starbucks has been headquartered in Seattle, Washington, since its founding in 1997. *Id.* Ex. 3 ¶ 3. Product development, marketing, finance, and other departments are all located at the company's Seattle headquarters. *Id.*

The evidence also showed that Starbucks developed the Sip Kit as a promotional product offered as a prize to winners of a social media contest. *Id.* Ex. 4 ¶ 3. The Sip Kit concept was developed by the Starbucks marketing team located in Seattle. *Id.* The concept was not based on any information allegedly provided by Balmuccino to Starbucks, as the Starbucks marketing manager responsible for the promotion was not even aware of Balmuccino or the alleged meeting

in New York. *Id.* The contest lasted four days (from April 30, 2019, to May 3, 2019), and only ten contest winners received a prize package: the Sip Kit, other merchandise, and a Starbucks gift card. *Id.* Starbucks never sold the Sip Kit, either in New York or anywhere else. *Id.*

In its response, Balmuccino argued that California had personal jurisdiction over Starbucks. *Id.* Ex. 5. It did not at any point suggest New York may have personal jurisdiction over Starbucks. *See id.* Indeed, Balmuccino's brief expressly argued that "California residents suffered the brunt of the harm and were the focal point of Defendant's wrong-doing, *even though the pitch meeting took place in New York*." *Id.* at 10 (emphasis added).

On July 17, 2020, the California trial court dismissed Balmuccino's lawsuit for lack of personal jurisdiction. *Id.* Ex. 6. Balmuccino appealed. *Balmuccino, LLC v. Starbucks Corp.*, 2022 WL 3643062 (Cal. App. 2d Dist. Aug. 24, 2022). Two years later, on August 24, 2022, the California Court of Appeal affirmed the dismissal, concluding California did not have personal jurisdiction over Starbucks because the "Sip Kit lip glosses, as well as the entire promotional campaign, were created, developed, and launched in Washington, not California." *Id.*, at *5.

### 2. *The Washington Litigation*

More than two years after the California trial court concluded it lacked personal jurisdiction over Starbucks, and two months after the California appellate court affirmed that decision, on October 21, 2022, Balmuccino initiated a second action against Starbucks in the U.S. District Court for the Western District of Washington, invoking the court's diversity jurisdiction. Diakos Decl. Ex. 7 ¶ 3. By that time, the 3-year statute of limitations applicable to Balmuccino's claims had expired.[2] Moreover, Balmuccino had allowed its LLC status to become inactive. *Id.* Ex. 9 at 5. On

---

[2] *See Balmuccino*, 2023 WL 4761447, at *7 ("It is uncontested that all of Balmuccino's causes of action have a three-year statute of limitations period. . . . It is also uncontested that Balmuccino filed suit in this Court more than three years after learning of" the alleged trade secret misappropriation by Starbucks).

January 20, 2023, Starbucks filed its first motion to dismiss, arguing Balmuccino lacked capacity to sue because its LLC status was inactive, and because its claims were time-barred. *Id.* Ex. 8. Instead of filing a response, Balmuccino filed an amended complaint, without leave from the court, after the deadline to amend the complaint as a matter of right had passed. *Id.* Ex. 10 at 1. On February 21, 2023, the district court granted the motion to dismiss by Starbucks and struck Balmuccino's untimely amended complaint, but granted Balmuccino leave to amend. *Id.* at 1–2.

Balmuccino filed an amended complaint alleging substantially the same claims as in the prior California litigation, except adding for the first time a claim under the federal Defend Trade Secrets Act ("DTSA"). *Id.* Ex. 12 at ¶¶ 59–63. Starbucks again moved to dismiss Balmuccino's claims as time-barred under Washington law. *Id.* Ex. 12. In its response, Balmuccino argued that California law applied to its claims. *Id.* Ex. 13 at 7–12. On July 26, 2023, the Washington district court granted the motion to dismiss by Starbucks, conducting a conflict of law analysis and holding that Washington law applied to Balmuccino's claims, and its claims were time-barred. *Balmuccino, LLC v. Starbucks Corp.*, 2023 WL 4761447 (W.D. Wash. Jul. 26, 2023). The Ninth Circuit affirmed the decision in its entirety. *Balmuccino, LLC v. Starbucks Corp.*, 2024 WL 4262805 (9th Cir. Sept. 23, 2024).

## III.     LEGAL STANDARD

"Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint." *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 310 (S.D.N.Y. 2008) (citation omitted). On a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of demonstrating that the court has personal jurisdiction over each defendant." *Friedman v. Bloomberg*, 884 F.3d 83, 90 (2d Cir. 2017). To meet its burden, the plaintiff must "make a prima facie showing that jurisdiction

exists." *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institución De Banca Múltiple*, 92 F.4th 450, 456 (2d Cir. 2024). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Id.* (citation and alterations omitted).

"Issues of res judicata and collateral estoppel may be decided on a motion to dismiss." *Peralta v. St. Lukes Roosevelt Hosp.*, 2015 WL 3947641, at *3 (S.D.N.Y. Jun. 26, 2015) (citing *Cameron v. Church*, 253 F. Supp. 2d 611, 617–24 (S.D.N.Y. 2003)). Dismissal is appropriate if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Finally, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although courts must accept factual allegations as true and make reasonable inferences in the plaintiff's favor, it need not accept mere "labels and conclusions," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*).

## IV.     ARGUMENT

### A.     The Court lacks personal jurisdiction over Starbucks.

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis. *Bohn v. Bartels*, 620 F. Supp. 2d 418, 424 (S.D.N.Y. 2007). First, a "district court sitting in diversity applies the forum state's law to determine whether it has personal jurisdiction over a defendant." *Id.* Second, "[i]f the forum state's law allows the exercise of

personal jurisdiction, then the Court must determine whether doing so comports with due process guarantees of the United States Constitution." *Id.*

"New York law provides for both general and specific personal jurisdiction." *Id.* at 425 (citing CPLR §§ 301–302). General jurisdiction "allows a court to adjudicate any cause of action against the defendant, regardless of where it arose." *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 124–25 (S.D.N.Y. 2021). Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.* at 125. Courts "examine the issue of personal jurisdiction separately for each cause of action asserted by the complaint[.]" *S.L. Kaye Co., Inc. v. Dulces Anahuac, S.A.*, 524 F. Supp. 17, 20 (S.D.N.Y. 1981).

1.    *Starbucks is not subject to general personal jurisdiction in New York.*

A court "may exercise general jurisdiction over an out-of-state defendant if the defendant engages in continuous, permanent, and substantial activity in New York." *Al-Ahmed*, 553 F. Supp. 3d at 125 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)) (internal quotes omitted). "An out-of-state corporation is subject to general jurisdiction in a state 'only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Id.* at 125 (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)). "Other than in 'exceptional case[s],' a corporation is 'at home' only in its state of incorporation and in the state of its principal place of business.'" *Id.* (quoting *Gucci Am.*, 768 F.3d at 135). "Because a corporation that operates in many states or countries can scarcely be deemed at home in all of them, 'when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Id.* (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)).

Balmuccino cannot meet this high standard. Starbucks is a Washington corporation. Compl. ¶ 4. Balmuccino's sole allegation relating to general personal jurisdiction is that Starbucks "has a regional office in New York." *Id.* This falls woefully short of the kind of contacts that would render a corporation "essentially at home" in New York. *See Al-Ahmed*, 553 F. Supp. 3d at 125 ("simply having a large office . . . in a forum is not enough to establish general jurisdiction."). Indeed, it is telling that in the California litigation, Balmuccino never argued that Starbucks is subject to general personal jurisdiction outside of Washington. *See Balmuccino*, 2022 WL 3643062, at *2 ("It is undisputed Starbucks is a Washington corporation and Balmuccino does not contend that Starbucks is subject to general jurisdiction in California.").

2. *Starbucks is not subject to specific personal jurisdiction in New York.*

Under CPLR § 302(a), a court may exercise specific personal jurisdiction over an out-of-state defendant as to causes of action arising: (1) "transact[ing] any business within the state"; (2) "commit[ting] a tortious act within the state; or (3) "commit[ting] a tortious act without the state causing injury to person or property within the state," where certain additional forum contact requirements are met. Here, Balmuccino's sole basis for asserting specific personal jurisdiction is a single meeting, lasting approximately one hour, that occurred between Balmuccino and Starbucks representatives in New York. *See* Compl. ¶¶ 14–20. This meeting is insufficient to establish specific personal jurisdiction over Starbucks for any of Balmuccino's claims.

a. *There is no specific personal jurisdiction over Balmuccino's trade secret misappropriation claims.*

There is no specific personal jurisdiction over Balmuccino's trade secret misappropriation claims (Counts 4–6). The brief pitch meeting in New York was an exploratory meeting that does not rise to the level of "transacting business" under CPLR § 302(a)(1). Moreover, the alleged acts of misappropriation—the creation, development, and launch of the Sip Kit—did not take place in

New York and therefore cannot satisfy the "arising under" prong of CPLR § 302(a)(1), or the "tortious act within the state" requirement of CPLR § 302(a)(2). Finally, there are no plausible allegations that Starbucks caused an injury in New York under CPLR § 302(a)(3).

i.      *CPLR § 302(a)(1): transacting business within the state.*

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether [the] cause of action 'arises from' such a business transaction." *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 360 (S.D.N.Y. 2012).

As to prong one, "exploratory meetings taking place in New York, 'leading to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York,' are not sufficient contacts to constitute the transaction of business within the meaning of CPLR 302(a)." *V Cars*, 902 F. Supp. 2d at 361 (citation omitted). *V Cars* is instructive. There, the plaintiff's and defendant's representatives met in New York on two separate occasions to discuss a possible joint business venture. *Id.* at 361–62. At both meetings, neither of defendant's representatives "promised anything" to plaintiff, "nor did the parties negotiate any agreement during those meetings." *Id.* Instead, the plaintiff "made presentations . . . about their business plans, and [the defendant's representatives] expressed interest in further discussions." *Id.* The court held these contacts were insufficient to establish the defendant transacted business in New York. *Id.* The same is true here.

As to prong two, a claim arises out of a party's forum activities only if "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* at 360 (citation omitted). For claims of trade secret misappropriation, this "arises from" prong is not met if the alleged misappropriation occurred outside of New York.

For example, in *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 46 Misc. 3d 1202, 2014 WL 7201754, at *5 (Sup. Ct. N.Y. 2014), the court held even if negotiations occurred in New York, it did not have specific personal jurisdiction over plaintiff's trade secret misappropriation claims because the alleged misappropriation took place where the defendants resided, outside New York.

Here, there is no basis to exercise personal jurisdiction over Starbucks under CPLR § 302(a)(1). First, the New York meeting is precisely the type of "exploratory meeting" that does not constitute transacting business in New York. As Balmuccino admits, the meeting was a "pitch meeting" that ended in Starbucks suggesting it will "explore the possibility of a partnership or joint venture moving forward." Compl. ¶¶ 14, 20. Like the meeting in *V Car*, it does not rise to the level of transacting business because it led—at most—to nothing more than a proposal subject to further negotiation. Second, Balmuccino's trade secret misappropriation claims do not arise from the New York meeting. Balmuccino alleges that a year *after* the New York meeting, it learned Starbucks contacted Balmuccino's suppliers, and Starbucks later announced the launch of the Sip Kit. *Id.* ¶¶ 22–24. Balmuccino does not allege these acts, which give rise to its trade secret misappropriation claims, occurred in New York.[3] Like in *BGC Partners*, these alleged subsequent acts, which are the subject of Balmuccino's trade secret misappropriation claims, cannot satisfy the "arises from" prong of CPLR § 302(a)(1).

    *ii.*       *CPLR § 302(a)(2): tortious act within the state.*

For the same reason, Balmuccino fails to allege Starbucks committed any tortious act within New York. "Misappropriation is deemed to occur where the merchandise at issue is manufactured." *Acoustical Design, Inc. v. Control Elecs. Co.*, 1987 WL 8066, at *3 n.7 (E.D.N.Y.

---

[3] Nor could Balmuccino make such allegation. Starbucks previously submitted evidence in the California litigation that the Sip Kit concept was developed by the Starbucks marketing team located in Seattle, Washington. Diakos Decl. Ex. 4 ¶ 3.

Feb. 24, 1987). Here too, *V Cars* is instructive. There, the court held it did not have personal jurisdiction over claims that defendant "misappropriated confidential and proprietary trade secret information disclosed to [defendant's representatives] at the New York meetings" because any alleged misappropriation "was not committed in New York but rather in China, where the trade secret information was allegedly used[.]" 902 F. Supp. 2d at 365. Here, again, any alleged misappropriation occurred *after* the meeting in New York, in connection with the development and launch of the Sip Kit in Washington. Compl. ¶¶ 22–24. Balmuccino does not and cannot allege that these acts occurred in New York.

### iii. CPLR § 302(a)(2): tortious act within the state.

Finally, there is no personal jurisdiction under CPLR § 302(a)(3) because Starbucks did not "commit[] a tortious act without the state causing injury to person or property within the state." Other than conclusory allegations that need not be accepted as true (*see* Compl. ¶ 4), the Complaint is devoid of any allegations suggesting the alleged trade secret misappropriation caused Balmuccino to suffer an injury in New York. Indeed, aside from the initial pitch meeting, the Complaint makes no other factual allegations involving New York.

### b. There is no specific personal jurisdiction over Balmuccino's breach of contract and breach of confidence claims.

There is also no specific personal jurisdiction over Balmuccino's breach of contract or breach of confidence claims (Counts 1–3) because Balmuccino fails to allege the formation of a contract or confidential relationship in New York. While substantial negotiation or execution of a contract in New York may constitute transacting business under CPLR § 302(a)(1), there can be no specific personal jurisdiction unless the Complaint plausibly alleges that such acts actually took place. *See Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 407 (S.D.N.Y. 2000) ("Conclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a

factual allegation will not establish a prima facie showing of jurisdiction") (quoting *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018)) (internal quotes and alterations omitted); *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 472 (S.D.N.Y. 2016) ("Because the plaintiff has not sufficiently alleged a contract with these defendants, there is no personal jurisdiction over these defendants.").

To establish the existence of a contract, a plaintiff must "allege sufficient facts to establish 'an offer, acceptance of the offer, consideration, mutual assent, and intent to be bound." *Jinno Int'l Co. v. Premier Fabrics, Inc.*, 2013 WL 4780049, at *2 (S.D.N.Y. May 24, 2013). Further, "for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018). To plead a claim for breach of contract, the plaintiff must "identify the essential terms of the contract, including a specific provision of the contract that was breached." *Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5, 19 (S.D.N.Y. 2023).

"For a breach of confidence claim to be established, plaintiff must show that the parties either stood in a relationship imposing a duty of trust or confidentiality, or that they entered into an agreement establishing such a confidential relationship." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 101 (S.D.N.Y. 2020). Under New York law, "a confidential relationship is synonymous with fiduciary relationship and exists generally where the parties do not deal on equal terms and one trusts and relies on the other." *Boston Tea Co., LLC v. Bay Valley Foods, LLC*, 2019 WL 4747395, at *2 (S.D.N.Y. Sept. 27, 2019) (quotes and alterations omitted). To state a claim, the plaintiff "must allege the creation of a confidential relationship and that the defendant, in fact, accepted that relationship." *HC2*, 510 F. Supp. 3d at 101.

Balmuccino cannot establish specific personal jurisdiction over Starbucks because it does not plausibly allege the New York meeting gave rise to its breach of contract and breach of confidence claims. Aside from conclusory allegations, nothing in the Complaint can reasonably be construed as an offer, acceptance, consideration, mutual assent, and intent to form an agreement between the parties. There are no allegations that the parties even discussed entering a binding agreement. Indeed, the Complaint makes clear that Starbucks expressly *declined* to enter a non-disclosure agreement with Balmuccino. *See* Compl. ¶ 16 (Balmuccino asked Mr. Gelman to enter a non-disclosure agreement but Mr. Gelman "deflected"). At the end of the meeting, Mr. Gelman's comment regarding "*explor[ing] the possibility* of a partnership or joint venture moving forward" makes clear there was no mutual assent to enter a contractual relationship. *Id.* ¶ 20 (emphasis added). Moreover, there are no allegations about the terms about any purported agreement. For example, Balmuccino alleges "it was understood and otherwise implied that if Defendant used Plaintiff's ideas and concepts associated with the coffee-flavored lip balms, Plaintiff would be duly compensated and given proper credit." Compl. ¶ 47. These allegations fail to establish the most basic terms of any purported agreement, such as the agreement's duration, how Balmuccino would be compensated, or how it would be "given proper credit."

Similarly, Balmuccino does not plausibly allege the formation of a confidential relationship. A single short arms-length meeting between two business entities cannot plausibly form a confidential relationship. While Balmuccino alleges Mr. Gelman stated the meeting would be confidential, this alone cannot establish a confidential relationship akin to a fiduciary relationship. Thus, no act occurring in New York is sufficiently connected to a viable claim for breach of contract or breach of confidence to establish personal jurisdiction over Starbucks.

3.     *Exercise of personal jurisdiction over Starbucks does not comport with due process.*

Because Starbucks is not subject to personal jurisdiction under New York law, the Court "need not evaluate jurisdiction under due process guarantees of the United States Constitution." *Bohn*, 620 F. Supp. 2d at 426. Starbucks will nevertheless briefly address those factors for the sake of completeness. To determine whether the exercise of personal jurisdiction is reasonable, courts consider the following factors: (1) the burden on the defendant of defending suit in a foreign jurisdiction; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Of these factors, the burden on the defendant is the "primary concern." *Bristol-Meyers Squibb Co. v. Superior Court*, 582 U.S. 255, 256 (2017).

Starbucks is located in Washington. Many of its prospective witnesses, including the team that developed the Sip Kit at issue in this case, are located in Washington. *See* Diakos Decl. Ex. 3 ¶ 3; *id.* Ex. 4 ¶ 3. It would be unduly burdensome to force Starbucks to litigate this case in New York. In addition, neither party is a resident of New York. The sole connection to New York is a single pitch meeting that did not result in any ongoing business relationship. New York therefore has no interest in resolving this dispute between non-resident parties with minimal connections to the state. Finally, as discussed in more detail below, any interest in efficient resolution of controversies or social policies favor dismissal of this case. This case has already been resolved by the Western District of Washington, and judicial economy would be ill-served by entertaining yet another action by Balmuccino in this jurisdiction. Taken together, subjecting Starbucks to personal jurisdiction in New York does not comport with due process.

4. *Balmuccino is not entitled to jurisdictional discovery.*

When a plaintiff fails to make a prima facie case for jurisdiction, a district court does not err by denying jurisdictional discovery. *See Donner v. DER SPIEGEL Gmbh & Co.*, -- F. Supp. 3d --, 2024 WL 4035215, at *9 (S.D.N.Y. Sept. 4, 2024); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007). The Court should decline to order jurisdictional discovery because nothing suggests discovery could lead to information likely to establish personal jurisdiction over Starbucks. Balmuccino alleges no facts suggesting Starbucks is "at home" in New York. Moreover, in the prior California litigation, Starbucks submitted evidence that the Sip Kit concept was developed by the Starbucks marketing team located in Seattle, and that team did not misappropriate Balmuccino's concept. Diakos Decl. Ex. 4 ¶ 3.

**B.** **Balmuccino's Complaint is precluded by *res judicata* and collateral estoppel.**

*1.* *Washington law applies to the res judicata and collateral estoppel analysis.*

In *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court established that the "preclusive effect of a judgment rendered by a federal court sitting in diversity . . . is determined by the law of the state in which the rendering court sat." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (citing *Semtek*, 531 U.S. at 508); *see also Stinnett v. Delta Air Lines, Inc.*, 803 Fed. App'x 505, 508, n.3 (2d Cir. 2020) (same); *In re Mirena IUD Prods. Liab. Litig.*, 2015 WL 5037100, at *4 (S.D.N.Y. Aug. 26, 2015) ("The rule ultimately prescribed by *Semtek* . . . is that the second court's determination of the preclusive effect of a federal diversity court's judgment requires application of the claim preclusion rules of the state that provided the rules of law in the first action.").

In *Semtek*, a California federal court, sitting in diversity, dismissed plaintiff's claim as barred by the statute of limitations. *Semtek*, 531 U.S. at 499. Subsequently, a Maryland state court dismissed a second identical lawsuit based on *res judicata* due to the California federal court's

dismissal. *Id.* at 500. On appeal, the issue before the Supreme Court was what law should have applied to the Maryland state court's *res judicata* analysis. *Id.* at 499. The Supreme Court held that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Id.* at 508. Federal law, in turn, requires application of "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508. Thus, California law applied because the *res judicata* analysis was governed by "a federal rule that in turn incorporates California's law of claim preclusion." *Id.* at 509.

Here, Balmuccino invoked the Washington district court's diversity jurisdiction. Diakos Decl. Ex. 11 ¶ 3 (Amended Compl.) (alleging diversity jurisdiction as the basis of jurisdiction). Therefore, under *Semtek*, Washington law—the law of the state in which the Washington district court sat—applies.[4]

### 2. *This action is barred by the doctrine of res judicata.*

*Res judicata* ensures the finality of decisions. A final judgment on the merits bars a party like Balmuccino from re-litigating claims that it actually raised, or could have raised, in its prior action. Here, *res judicata* bars Balmuccino from bringing this third action against Starbucks because the order by the Western District of Washington, affirmed by the Ninth Circuit, conclusively resolved this litigation between the parties. "The doctrine of res judicata rests upon the ground that a matter which has been litigated . . . in a former action in a court of competent jurisdiction, should not be permitted to be litigated again." *Penner v. Cent. Puget Sound Reg'l*

---

[4] At the pre-motion conference, the Court raised the applicability of *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93 (2d Cir. 2009), which held dismissal of a claim solely for lack of timeliness is not a judgment on the merits under New York law. For the reasons discussed, Washington law applies to the *res judicata* and collateral estoppel analysis, and therefore *Cloverleaf* in inapplicable. In any case, subsequent courts have "expressed doubt" about *Cloverleaf*'s interpretation of New York law and noted "not a single New York court had followed *Cloverleaf*'s lead." *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 394–95 (N.D.N.Y. 2023). The issue of whether a dismissal for lack of timeliness is a judgment on the merits under New York law "remains unsettled." *Id.* at 395; *see Webb v. Greater N.Y. Auto Dealers Ass'n, Inc.*, 144 A.D.3d 1134, 1135 (2d Dep't 2016) ("a dismissal on the ground of statute of limitations is considered to be on the merits for res judicata purposes");

*Transit Auth.*, 525 P.3d 1010, 923 (Wash. Ct. App. 2023) (citation omitted). It is intended to "prevent piecemeal litigation and support[] the finality of judgment." *Id.* at 924.

Under Washington law, as a threshold requirement, *res judicata* applies only to a "valid and final judgment on the merits in a prior suit." *Carter v. MultiCare Health Sys.*, 553 P.3d 98, 107 (Wash. Ct. App. 2024) (citation omitted). If this threshold requirement is met, courts will bar subsequent actions that are identical to the prior action in "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) quality of the persons for or against whom the claim is made." *Id.* (citation omitted).

> a. *The decision by the Western District of Washington was a judgment on the merits.*

Washington courts follow the federal rule that "for res judicata purposes a dismissal on statute of limitations grounds can be treated as a dismissal on the merits." *Campbell v. Fernandez*, 473 P.3d 675, at 679 n. 4 (Wash. Ct. App. 2020) (quoting *In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999)); *see also Evans v. Heimann*, 2022 WL 101953, at *1 (W.D. Wash. Jan. 11, 2022) (noting under Washington law, a dismissal on statute of limitations grounds is a judgment on the merits); *Goulsby v. Waddington*, 2008 WL 2996999, at *5 (W.D. Wash. Aug. 1, 2008) ("dismissal with prejudice is equivalent to a final judgment on the merits to which res judicata principles may apply") (citing Washington law).

*Campbell* is illustrative. There, the plaintiffs filed an original action but struggled to serve the defendant prior to expiration of the statute of limitations. 473 P.3d at 676. Accordingly, the plaintiffs filed a second identical "protective action" "to obtain additional time (90 days from filing) within which to accomplish effective service." *Id.* "The protective action was properly filed and could have proceeded but for a twist." *Id.* The plaintiffs did not disclose the existence of the second protective action to the first court, and the first court dismissed the first action with

prejudice, holding it was barred by the statute of limitations. *Id.* The second court then dismissed the second protective action as barred by *res judicata*. *Id.* at 678. The appellate court affirmed the second court's dismissal, holding the first court's dismissal with prejudice on statute of limitations grounds was a judgment on the merits that had "claim-preclusive and issue-preclusive effect." *Id.*

Here, the Washington district court held Balmuccino's claims were barred by the statute of limitations and dismissed them with prejudice. *Balmuccino*, 2023 WL 4761447, at *1. The Ninth Circuit affirmed. *Balmuccino*, 2024 WL 4262805, at *1. Under Washington law, the dismissal resulted in a final judgment on the merits. Like in *Campbell*, it is irrelevant that Balmuccino now files this new action that it alleges is not barred by New York's statute of limitations and equitable tolling principles. *See* Compl. ¶¶ 41–43. The prior dismissal of Balmuccino's claims was a judgment on the merits with claim-preclusive effect regardless of whether this action, standing alone, could have proceeded.

This result is consistent with *res judicata*'s goal of preventing piecemeal litigation and ensuring the finality of judgments. For five years, Balmuccino has mired Starbucks in an endless string of successive litigation. Balmuccino made the strategic choice to first file suit in California. Then, when the California trial court dismissed Balmuccino's claim for lack of personal jurisdiction, Balmuccino made the strategic choice to appeal that decision rather than refile its complaint in the proper forum. By the time the California court of appeals affirmed the trial court decision, and Balmuccino finally decided to sue in Washington, it was too late. The Washington district court dismissed Balmuccino's claims as time-barred, and the Ninth Circuit affirmed. *Balmuccino*, 2023 WL 4761447, at *1; *Balmuccino*, 2024 WL 4262805, at *1. This dismissal was a final judgment on the merits. The law does not allow Balmuccino to continue suing Starbucks in different forums to remedy its strategic miscalculations.

### b. The Washington action and this action are identical.

All other elements of the *res judicata* analysis are satisfied. The Washington action and this action involve the same subject matter: the alleged misappropriation of Balmuccino's concept for coffee-flavored lip balm. *Compare* Diakos Decl. Ex. 11 ¶¶ 6–17 *with* Compl. ¶¶ 8–28. Balmuccino asserts the same causes of action for breach of contract, breach of confidence, and trade secret misappropriation. *Compare* Diakos Decl. Ex. 11 ¶¶ 24–63 *with* Compl. ¶¶ 44–83. The actions involve identical parties: Balmuccino and Starbucks. *Compare* Diakos Decl. Ex. 11 ¶¶ 1–2 *with* Compl. ¶¶ 3–4. Finally, "[b]ecause the parties are identical, the quality of the persons is also identical." *Penderson v. Potter*, 11 P.3d 833, 838 (Wash. Ct. App. 2000). Thus, all *res judicata* elements are satisfied and Balmuccino is barred from bringing this action.

### 3. Collateral estoppel precludes relitigation of the applicable law.

In addition, the Court should dismiss this action because collateral estoppel precludes Balmuccino from relitigating the Washington district court and Ninth Circuit's determinations that Washington law applies, and Balmuccino's claims are time-barred under Washington law. Collateral estoppel, or issue preclusion, "prevents relitigation of an issue after the party estopped has already had a full and fair opportunity to present its case." *Pederson v. Potter*, 11 P.3d 833, 836 (Wash. Ct. App. 2000). "The requirement for application of the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice." *Id.*

*Newmont USA Ltd. v. Am. Home Assurance Co.*, 2010 WL 11508326, at *3 (E.D. Wash. Jul. 27, 2010) is instructive. In that case, a Washington federal court held that the plaintiff was

collaterally estopped from relitigating the prior choice of law determination of a New York court. The court reasoned that Washington and New York law require a similar conflict of law analysis, and therefore "relitigating the issue in this forum would involve consideration of similar facts argued and considered by the New York court." *Id.* Thus, "the identical question before this court was before the New York court" and "there is no reason why [plaintiff] should be permitted to relitigate the same issue here on the same facts." *Id.*[5]

Likewise here, Balmuccino should be precluded from relitigating the applicable choice of law because the Western District of Washington and the Ninth Circuit, applying similar conflict of law principles as this Court would apply, has already decided this issue. The Western District of Washington determined that Washington law applies because "Washington . . . has the more significant relationship to this case." *Balmuccino*, 2023 WL 4761447, at *6. Specifically, as to Balmuccino's contract claims, the court determined that "[b]ecause the contract concerned the sale of coffee-flavored lip balms by Starbucks, both the place of performance and the location of the contract's subject matter relate more to Washington." *Id.* "As a Washington-based company, Starbucks's Washington employees would have performed the contract or breached the contract in Washington." *Id.* In reaching this conclusion, the court relied on the California court's prior finding that "[t]he uncontroverted evidence before us is that the Sip Kit lip glosses, as well as the entire promotional campaign, were created, developed, and launched in Washington, not California." *Id.* (quoting *Balmuccino*, 2022 WL 3643062, at *5). As to Balmuccino's tort claims, the court found "Washington was the place where the conduct causing the injury occurred." *Id.*

---

[5] While *Newmont* was decided under New York law, the conclusion is equally applicable here: Washington and New York conflict of law rules are substantially similar and therefore relitigating the applicable law in either forum presents an identical issue for purposes of collateral estoppel.

The Ninth Circuit affirmed for the same reasons. *See Balmuccino*, 2024 WL 4262805, at *2 ("the most significant relationship test favors applying Washington law.").

All elements of issue preclusion are met. Balmuccino is raising an identical issue to the one presented in the prior litigation: the applicable choice of law. As discussed above, the prior Washington case resulted in a final judgment on the merits. *See supra* Section IV.B.2.a. Balmuccino was a party in the prior action. Finally, application of collateral estoppel will not work an injustice. Balmuccino had a full and fair opportunity to litigate the applicable choice of law before the Western District of Washington and the Ninth Circuit, and both courts determined Washington law applies to this case. It is not unjust to hold Balmuccino to the results of its prior strategic litigation decisions. Balmuccino should therefore be precluded from relitigating the applicable law. For the same reasons, it should be precluded from relitigating the prior determination that its claims are time-barred under Washington law.

## C.     Balmuccino's claims are time-barred.

Even if the Court declined to find this action is precluded by *res judicata* or collateral estoppel, and undertook a separate conflict of law analysis, it would reach the same result that all of Balmuccino's claims are time-barred.

### 1.     *Washington's three-year statute of limitations applies to Balmuccino's contract claims.*

Federal courts sitting in diversity apply the conflict of law rules of the forum state. *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255–56 (S.D.N.Y.2020). Under New York law, the first step in a conflict-of-law analysis is to determine "whether there is an actual conflict of laws on the issues presented." *Id.* (citation omitted). If an actual conflict exists, courts apply the "center of gravity" or "grouping of contacts" analysis for contract claims, which looks at the contacts between the disputed contract and the relevant states." *Id.* "Factors to consider in this analysis include 'the

place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties.'" *Id.* (citation omitted).

An actual conflict exists between Washington and New York law as to Balmuccino's contract claims because New York has a longer statute of limitations for claims based on an oral or implied contract. *Compare* Wash. Rev. Code 4.16.080 (three-year statute of limitations for breach of oral or implied contracts) *with* CPLR § 213(2) (six-year statute of limitations for breach of contracts, whether "express or implied").[6]

Turning to the center of gravity test, the weight of the factors favors application of Washington law. The first factor—the place of contracting, negotiation and performance—is at best neutral. While Balmuccino alleges the formation of a contract in New York, the place of performance was in Washington where Starbucks is based. *See Balmuccino*, 2023 WL 4761447, at *6 ("As a Washington-based company, Starbucks's Washington employees would have performed the contract or breached the contract in Washington."). Under New York law, the place of contracting "may not be controlling as to the choice of law where other considerations established that the 'center of gravity' or 'the most significant contacts with the matter in dispute' lie in another place." *Perrin v. Pearlstein*, 314 F.2d 863, 867 (2d. Cir. 1963). The second factor— the location of the subject matter of the contract—favors Washington. Any alleged contract would concern the creation of coffee-flavored lip balms by Starbucks in Washington. *See Balmuccino*, 2023 WL 4761447, at *6 ("Because the contract concerned the sale of coffee-flavored lip balms by Starbucks . . . the location of the contract's subject matter relate more to Washington."). Finally, the third factor—the domicile of the contracting parties—again favors Washington. Starbucks is

---

[6] To the extent Balmuccino argues California law applies, this argument is precluded by collateral estoppel as discussed above.

domiciled in Washington, and no party is domiciled in New York. The vast majority of these factors therefore support application of Washington law.

Applying Washington's three-year statute of limitations, Balmuccino's contract claims are time-barred. As the Washington district court previously explained, even under the most generous reading of the Complaint, the three-year statute of limitations would have lapsed in April 2020. *Id.* at *7, n.6. Balmuccino filed this action in August 2024. Dkt. 1. Moreover, the statute of limitations cannot be equitably tolled. Under Washington law, a "predicate" for equitable tolling is "bad faith, deception, or false assurances by the defendant" that interfered with timely filing of a plaintiff's complaint. *Id.*, at *8 (citing *Fowler v. Guerin*, 515 P.3d 502, 503 (Wash. Sup. Ct. 2022)). Balmuccino does not and cannot allege this element is satisfied.

> 2. *Balmuccino's other state law claims are barred under either Washington or New York law.*

There is no apparent actual conflict between Washington and New York law as to Balmuccino's state law trade secret or breach of confidence claims, and therefore it is not necessary to undergo a conflict of law analysis. Under both Washington and New York law, these claims have a three-year statute of limitations. *See* Wash. Rev. Code 4.16.080(2); RCW 19.108.060; CPLR §214(4)–(5). Moreover, the statute of limitations cannot be tolled under either state's law.

Balmuccino incorrectly asserts in its Complaint that "[l]ike Washington, New York State recognizes equitable tolling as an exceptional remedy" and "one of those exceptions is when a party misfiles in the wrong forum . . . ." Compl. ¶ 41. The doctrine of equitable tolling, on which Balmuccino appears to rely, "is federal in nature and does not apply to claims based solely on New York law." *Cary Oil Co. v. Mg Refining and Mktg., Inc.*, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000). Instead, New York "recognizes the related but not identical doctrine of equitable estoppel, which bars a defendant from pleading the statute of limitations 'where plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action.'" *Id.* (citation omitted). Thus, under both Washington and New York law, Balmuccino can toll the applicable statute of limitations only if it shows Starbucks induced it to file its complaint past the statute of limitations. As discussed above, Balmuccino cannot make this showing.

   3.  *Balmuccino's federal trade secret claim cannot be tolled.*

Finally, Balmuccino cannot toll the three-year statute of limitations for its claim under the federal DTSA. Balmuccino asserted this claim for the first time on March 9, 2023, when it filed its first amended complaint in the Western District of Washington. *See* Diakos Decl. Ex. 1 ¶¶ 45–50 (California complaint asserting only trade secret claim under California law and seeking punitive damages under California Civil Code 3294); *id.* Ex. 11 ¶¶ 59–63. Therefore, Balmuccino cannot assert filing its action in the incorrect forum as the basis for equitably tolling this claim. As the Western District of Washington determined, no federal equitable tolling principle applies to this claim. *See Balmuccino*, 2023 WL 4761447, at *8, n.7 ("As Balmuccino's federal claim was untimely, and federal equitable tolling principles do not extend to 'garden variety claim[s] of excusable neglect . . . Balmuccino is not entitled to relief based on the federal equitable tolling doctrine.") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

### D.  Balmuccino fails to state a claim.

If Balmuccino's Complaint survives the numerous deficiencies discussed above, it must still be dismissed for failure to state a claim. For the reasons already discussed, Balmuccino fails to plausibly allege causes of action for breach of contract or breach of confidence. *See supra* Section IV.A.2.b. Balmuccino also fails to state a claim for trade secret misappropriation.

Starbucks assumes that if the Court reaches this failure to state a claim issue, it has determined New York law applies to Balmuccino's claims. The Court should therefore dismiss

Balmuccino's Count 4 for trade secret misappropriation pursuant to the California Uniform Trade Secret Act.

The Court should also dismiss Balmuccino's New York trade secret claim and DTSA claim (Counts 5 and 6) because Balmuccino fails to allege either the existence of a trade secret, or that Starbucks misappropriated Balmuccino's trade secret. "[T]he elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021) (quotes omitted). Thus, "[i]n assessing DTSA claims, courts in this Circuit often look to New York trade secret law." *Id.* Under New York law, "[a] plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Id.*

1.      *Balmuccino fails to allege that it possessed a trade secret.*

In assessing whether a plaintiff alleged the possession of a trade secret, New York courts consider the following factors:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* Of these factors, the "most important consideration is whether the information was secret." *Id.* (quotes omitted). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Id.*

New York courts routinely dismiss trade secret misappropriation claims where a plaintiff voluntarily discloses its purported trade secret without taking appropriate measures to protect its

secrecy. *See, e.g.*, *id.* at 427 (holding plaintiff failed to "meet the threshold of sufficient secrecy" based on allegations that other individuals had access to purported trade secret "without any confidentiality agreements, instruction to keep the algorithm secret, or other protective security measures"); *Pauwels v. Deloitte LLP*, 2020 WL 818742, at *6 (S.D.N.Y. Feb. 19, 2020) (holding plaintiff failed to allege existence of trade secret because he failed to allege "the existence of any formal agreement between him and [defendant] regarding the information's confidentiality" or that he took other reasonable measures to protect secrecy of the information disclosed); *Jinno*, 2013 WL 4780049, at *5 (plaintiff must "allege facts sufficient to show that the information in fact is secret"). A "request or presumption of confidentiality alone is insufficient to plausibly allege 'substantial measures' taken to protect secrecy." *Pauwels*, 2020 WL 818742, at *8.

Balmuccino fails to allege that it took appropriate measures to guard its purported trade secrets. Balmuccino identifies its purported trade secrets as "a pitch deck, fully realized prototypes, identification of suppliers and materials, explanation of the results of research and development efforts, trial and error results, marketing ideas, [and] market data" for its coffee-flavored lip balm product. Compl. ¶ 70. The Complaint makes no allegations about the measures Balmuccino took to safeguard these purported trade secrets, including traditional measures like using password protection, restricting access on a need-to-know basis, or requiring its suppliers to sign non-disclosure agreements. Significantly, Balmuccino admits that it voluntarily shared its information with Starbucks after Mr. Gelman *declined* to sign a non-disclosure agreement. *Id.* ¶ 16. A secret garners trade secret protection under the law only if plaintiff "derives independent economic value" from not being generally known to or ascertainable by others. *See* 18 U.S.C. § 1839(3)(B) (defining "trade secret"). Courts interpret this requirement to require factual allegations showing why the alleged trade secret gives plaintiff "an economic leg up 'over competitors who do not

know or use it.'" *24 Seven, LLC v. Martinez,* 2021 WL 276654, at *9 (S.D.N.Y. Jan. 26, 2021).

Here, Plaintiff alleges that Starbucks knew that the information it acquired from Plaintiff during the meeting "had independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use." (Compl. ¶ 77.) This formulaic recitation of an element of a trade secret misappropriation claim is insufficient. *Inv. Sci., LLC v. Oath Holdings Inc.,* 2021 WL 3541152, at *2 (S.D.N.Y. Aug. 11, 2021) (granting motion to dismiss for failure to allege independent economic value). Balmuccino also fails to allege any facts regarding many of the other trade secret factors considered by New York courts. For example, Balmuccino does not allege what specific steps Balmuccino took to develop the purported trade secret, the ease or difficulty with which others could duplicate the information, or the steps (if any) that Balmuccino took to ensure the secrecy of such information. Accordingly, Balmuccino fails to plead the existence of a trade secret under New York law.

2. *Balmuccino fails to allege Starbucks misappropriated Balmuccino's trade secret.*

Balmuccino also fails to allege that Starbucks "us[ed] [Balmuccino's] trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Zabit*, 540 F. Supp. 3d at 421.

First, Balmuccino does not plausibly allege that Starbucks "used" Balmuccino's purported trade secret. Balmuccino pitched to Starbucks its concept for a coffee-flavored lip *balm*. Compl. ¶ 70. Balmuccino's trade secret misappropriation claim is based on the launch of "a kit of four liquid *lipsticks/glosses*" by Starbucks. *Id.* ¶ 24 (emphasis added). "[W]here an alleged thief's products lack a suspicious similarity to the secrets, the inference [of misappropriation] would not lie." *Big Vision Private Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 275 (S.D.N.Y. 2014).

Balmuccino's allegations do not plausibly support an inference that Starbucks used Balmuccino's purported trade secrets to create the Sip Kit.

Second, as discussed, Balmuccino does not plausibly allege the existence of an agreement, confidential relationship, or duty. *See supra* IV.A.2.b. It therefore does not allege use of the purported trade secret in breach of such obligations.

Finally, Balmuccino fails to allege Starbucks discovered Balmuccino's purported trade secrets through improper means. Improper means "requires showing that [defendant] acted in bad faith, which typically is demonstrated by acts such as 'fraudulent misrepresentation to induce disclosure, tapping of telephone wires, eavesdropping or other espionage' – all conduct that 'fall[s] below the generally accepted standards of commercial morality and reasonable conduct.'" *Pauwels*, 2020 WL 818742, at *9 (quoting *Big Vision*, 1 F. Supp. 3d at 273). In *Pauwels*, the court held the plaintiff failed to allege a defendant received information through improper means when the complaint alleges another party "voluntarily gave the spreadsheets to [defendant] – as part of a normal business arrangement." *Id.* Like in *Pauwels*, Balmuccino's allegations can only support the conclusion that Balmuccino voluntarily gave its information to Starbucks as part of a normal business arrangement. These facts cannot support a claim for trade secret misappropriation.

## V.  CONCLUSION

For the forgoing reasons, Starbucks respectfully requests that the Court dismiss Balmuccino's Complaint with prejudice.

Dated: New York, New York
November 22, 2024

K&L GATES LLP

By: */s/ Joanna A. Diakos*
Joanna A Diakos
joanna.diakoskordalis@klgates.com
599 Lexington Avenue
New York, New York  10022-6030
Telephone:  +1 212 536 3900
Facsimile:  +1 212 536 3901

Attorneys for Defendant