UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BALMUCCINO, LLC,<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>STARBUCKS CORPORATION,<br><br>                              Defendant. | 24 Civ. 6214 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

        This case is the latest in a series of actions brought by Plaintiff Balmuccino, LLC ("Plaintiff" or "Balmuccino") against Defendant Starbucks Corporation ("Defendant" or "Starbucks") for Defendant's alleged breach of contract and misappropriation of trade secrets.  Plaintiff's claims arise from an October 2017 meeting in New York, after which Defendant allegedly misappropriated confidential information related to the production of coffee-flavored lip balms.  Having had these very allegations dismissed (i) by the California state courts (for lack of jurisdiction) and (ii) by the Western District of Washington and the Ninth Circuit (as time-barred), Plaintiff now seeks relief in the Southern District of New York.  Currently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  For the reasons stated in the remainder of this Opinion, the Court grants Defendant's motion to dismiss.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties**

Plaintiff is a California limited liability company that does business in Los Angeles, California. (Compl. ¶ 3). Defendant is a Washington corporation "which does business in California, and which has a regional office in New York." (*Id.* ¶ 4).

**2.    The Alleged Misconduct**

Beginning in or around 2016, Plaintiff, through its managing members, began developing a line of coffee-flavored lip balms. (Compl. ¶ 8). After finalizing its product, Plaintiff sought to leverage the lip balms and enter into a joint venture with another entity. (*Id.* ¶ 9). In or around June 2017, one of Plaintiff's managing members, who is a sister-in-law of Dr. Mehmet Cengiz Öz, a television personality and the current Administrator of the Centers for

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on certain exhibits attached to the Declaration of Joanna A. Diakos ("Diakos Decl." (Dkt. #17)), which exhibits pertain to other litigations between the parties. While the Court takes judicial notice of these documents, it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also Holland* v. *JPMorgan Chase Bank, N.A.*, No. 19 Civ. 233 (PAE), 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019) ("[I]t is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation." (internal quotation marks omitted) (quoting *Cowan* v. *Codelia*, No. 98 Civ. 5548 (JGK), 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001))).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #19); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #20); and to Defendant's reply memorandum of law as "Def. Reply" (Dkt. #21).

Medicare & Medicaid Services, informed Dr. Öz of Plaintiff's search for a business partner. (*Id.* ¶ 10-11). Dr. Öz contacted Howard Schultz, then the CEO of Starbucks, on Plaintiff's behalf. (*Id.* ¶ 12). Mr. Schultz then recommended that Plaintiff's members meet with Starbucks's Head of Product Development and Senior Vice President, Mesh Gelman. (*Id.* ¶ 13).

Accordingly, on or about October 19, 2017, various members of Plaintiff's team flew from California to New York to meet with Mr. Gelman and his assistant, Peter Ginsburg, in Defendant's New York corporate offices. (Compl. ¶ 14). During the meeting, Plaintiff's representatives presented Mr. Gelman with "a pitch deck along with fully recognized prototypes for Plaintiff's product line." (*Id.* ¶ 15). When the representatives requested that Mr. Gelman sign a Non-Disclosure Agreement ("NDA"), Mr. Gelman deflected this request by insisting that the meeting was confidential and that the relationship between Mr. Schulz and Dr. Öz should afford Plaintiff the necessary comfort to proceed. (*Id.* ¶ 16). The parties continued with the meeting, during which Plaintiff's lead chemist and product manufacturer, Vince Spinnato, allegedly explained in detail the entire process used to create the lip balms, including the names and locations of the material suppliers and manufacturers of Plaintiff's product. (*Id.* ¶¶ 17-18). Mr. Gelman's assistant allegedly took notes throughout the meeting, and Mr. Gelman asked to retain a copy of Plaintiff's pitch deck to share internally within Starbucks. (*Id.* ¶¶ 19-20). Ultimately, however, only two weeks after the meeting, Mr. Gelman informed Plaintiff that he was leaving Defendant to start his own consulting company. (*Id.* ¶ 21).

Plaintiff assumed that Defendant had simply passed on the project; however, in 2018, Plaintiff learned that Defendant had reached out to one of its suppliers. (Compl. ¶ 22). Specifically, Plaintiff was informed that individuals from Defendant's Research and Development team had inquired about coffee-flavored lip products and asked for prototypes of Starbucks-branded lip balms. (*Id.* ¶ 23). Plaintiff also learned that the specifications of the prototypes requested by Starbucks matched those for Plaintiff's product, *i.e.*, those given to Mr. Gelman during the October 19, 2017 meeting. (*Id.*). In April 2019, Starbucks announced the launch of its own lipsticks/glosses kit called "The S'mores Frappuccino Sip Kit" (the "Sip Kit"). (*Id.* ¶ 24). The Sip Kit, which was a promotional campaign created to celebrate the return of Starbucks's S'mores Frappuccino, included four product shades. (*Id.*). Plaintiff alleges that Starbucks misappropriated its confidential information when making the Sip Kit, and thus sought to monetize its product without due compensation. (*Id.* ¶¶ 27-28).

### 3. The Prior Litigations

As a result of the events outlined above, on October 18, 2019, Plaintiff brought suit against Defendant in California Superior Court for the County of Los Angeles for breach of contract and trade secret misappropriation. (Compl. ¶ 29 (providing Case Number 19-STCV-3744)). The California trial court, however, dismissed the action for lack of personal jurisdiction. (*Id.* ¶ 33). On September 10, 2020, Plaintiff appealed this decision to the California Court of Appeal. (*Id.* ¶¶ 34-35). The California Court of Appeal affirmed the Superior

4

Court's dismissal of the case, and issued its remittur on October 26, 2022. (*Id.* ¶ 35).

On October 21, 2022, five days before the California Court of Appeal affirmed the California Superior Court's dismissal of the action, Plaintiff refiled its case in the United States District Court for the Western District of Washington (the "Washington Litigation"). (Compl. ¶ 36). However, this effort also proved unsuccessful, and Plaintiff's federal action was dismissed. (*Id.* ¶ 38). Specifically, the Western District of Washington reasoned that Plaintiff's contract and tort-related claims were governed by Washington law, and thus were subject to a three-year statute of limitations period. (*Id.*). Because the complaint had been filed after the applicable statute of limitations expired, and because Plaintiff was not entitled to equitable tolling under Washington law, the action was dismissed as time-barred. (*Id.* ¶ 39). *See Balmuccino, LLC* v. *Starbucks Corp.*, No. 22 Civ. 1501 (JHC), 2023 WL 4761447, at *5, 7 (W.D. Wash. July 26, 2023) ("*Balmuccino III*"). Plaintiff appealed the district court's decision on or about August 24, 2023 (Compl. ¶ 40), but the Ninth Circuit upheld the findings of the district court, *Balmuccino, LLC* v. *Starbucks Corp.*, No. 23-35561, 2024 WL 4262805, at *1 (9th Cir. Sept. 23, 2024) (memorandum disposition) ("*Balmuccino IV*"). Before the Ninth Circuit had rendered its decision, Plaintiff brought this suit in the Southern District of New York, advancing — for the third time — the allegations presented to the courts in California and Washington. (*See* Dkt. #1).

**B.    Procedural Background**

Plaintiff initiated this action with the filing of the Complaint on August 16, 2024.  (Dkt. #1).  On September 20, 2024, Defendant filed a pre-motion letter, requesting a conference on its anticipated motion to dismiss the Complaint in its entirety.  (Dkt. #13).  Plaintiff opposed Defendant's request to file a motion to dismiss.  (Dkt. #14).  On October 22, 2024, the Court held a pre-motion conference, during which the Court set a briefing schedule for Defendant's anticipated motion.  (*See* October 22, 2024 Minute Entry).

In accordance with the Court's briefing schedule, on November 22, 2024, Defendant filed its motion to dismiss the Complaint.  (Dkt. #16-19).  On January 3, 2025, Plaintiff filed its opposition to the motion to dismiss.  (Dkt. #20).  Finally, on January 17, 2025, Defendant filed its reply in further support of its motion to dismiss.  (Dkt. #21).

## DISCUSSION

**A.    The Court Grants in Part and Denies in Part Defendant's Motion to Dismiss Pursuant to Rule 12(b)(2)**

**1.    Applicable Law**

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam) (internal quotation marks omitted) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d. Cir. 1999)).  Moreover, "[a] plaintiff 'must establish the court's jurisdiction with respect to each claim asserted.'" *Charles*

*Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)); *accord Sullivan* v. *UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025).

If a court does not conduct an evidentiary hearing on the issue of personal jurisdiction, as is the case here, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84. A plaintiff makes such a showing through "an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (alterations in original) (quoting *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). The plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). Even if a court does not hold an evidentiary hearing on the jurisdictional question, it may consider matters outside the pleadings. *See Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

A district court deciding a motion to dismiss for lack of personal jurisdiction engages in a two-part analysis. *First*, the court must establish whether there is a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this

determination, the court "applies the forum state's personal jurisdiction rules," unless a federal statute provides for national service of process.  *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  *Second*, the court must decide whether "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).  There are "two categories of personal jurisdiction: general and specific personal jurisdiction.  General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity.  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum."  *Gucci Am., Inc.* v. *Weixing Li,* 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks, citations, and brackets omitted).

### 2.    Analysis

It is well established that "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located."  *Spiegel* v. *Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) (per curiam).  In New York, as just noted, "there are two ways to establish personal jurisdiction over a defendant: [i] 'general jurisdiction' under [New York Civil Practice Law and Rules ("C.P.L.R.")] § 301; and [ii] 'specific jurisdiction' under … C.P.L.R. § 302." *Brown* v. *Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 430 (S.D.N.Y. 2019). Here, Plaintiff asserts that this Court has both general and specific jurisdiction over Defendant, while Defendant argues that personal jurisdiction is entirely

lacking.  The Court addresses each asserted basis for personal jurisdiction in turn.

### a.    The Court Lacks General Jurisdiction over Defendant

A court's exercise of general jurisdiction under C.P.L.R. § 301 requires that "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted."  *Sonera Holding B.V.*, 750 F.3d at 224 (internal quotation marks and brackets omitted) (quoting *Landoil Res. Corp.* v. *Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33 (1990)); *see generally Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) ("General jurisdiction, as its name implies, extends to any and all claims brought against a defendant.  Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world.  But that breadth imposes a correlative limit:  Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." (internal quotation marks and citations omitted)).

A defendant's "continuous activity of some sort[ ] within a state … is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."  *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915, 927 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 315 (1945)).  Rather, a corporation's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S.

at 317).  "Other than in 'exceptional case[s],' a corporation is 'at home' only in its state of incorporation and in the state of its principal place of business."  *Al-Ahmed* v. *Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021) (quoting *Gucci Am.*, 768 F.3d at 135); *accord Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014), *cited in Aybar* v. *Aybar*, 37 N.Y.3d 274, 289 (2021).

Plaintiff fails to establish any basis for this Court to assert general jurisdiction over Defendant.  Indeed, the Complaint only contains a single sentence implying general jurisdiction, wherein Plaintiff broadly claims that it has jurisdiction because Defendant "resides in this State and judicial district." (Compl. ¶ 6).  In its opposition to the motion to dismiss, Plaintiff attempts to supplement this threadbare assertion by arguing that it is not "clear" where Defendant's principal place of business is located, and thus jurisdictional discovery is required.  (Pl. Opp. 6).

The Court disagrees.  The Complaint is devoid of the concrete allegations necessary to suggest that Starbucks is headquartered in New York.  *See Gucci Am.*, 768 F.3d at 135 (finding that the existence of a local office in New York was insufficient to make out "an exceptional case" where a bank's contacts were "so continuous and systematic as to render it essentially at home in the forum" (internal quotation marks and brackets omitted) (quoting *Daimler*, 571 U.S. at 128, 139 n.19)); *Al-Ahmed*, 553 F. Supp. 3d at 125 (noting that "simply having a large office and a substantial number of employees in a forum is not enough to establish general jurisdiction").  The mere presence of Defendant's regional office in this District in no way suggests that general jurisdiction may

exist.  (*See* Compl. ¶¶ 4, 6).  Indeed, the Second Circuit has made clear that simply maintaining a regional office in a state is insufficient to establish general jurisdiction.  *See SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) ("Our Court, in interpreting *Daimler*, noted that the case 'expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum.'" (quoting *Gucci Am.*, 768 F.3d at 135)).

Lacking the particulars necessary to establish general jurisdiction, the Complaint's conclusory claims that Defendant resides in this state must be set aside.  Accordingly, the Court finds that Defendant is not subject to general jurisdiction in New York, and that Plaintiff is not entitled to jurisdictional discovery on the matter.  Having found no general jurisdiction, the Court next considers whether specific jurisdiction exists for Plaintiff's claims.

### b. The Court Lacks Specific Jurisdiction over Certain of Plaintiff's Claims

Under New York's long-arm statute, C.P.R.L. § 302(a), a court may exercise specific personal jurisdiction over an out-of-state defendant as to causes of action arising from (i) "transact[ing] any business within the state"; (ii) "commit[ting] a tortious act within the state"; (iii) "commit[ting] a tortious act without the state causing injury to person or property within the state"; or (iv) "own[ing], us[ing], or possess[ing] any real property situated within the state," where certain additional forum contact requirements are met.  As previously discussed, when the basis for personal jurisdiction is specific

11

jurisdiction, a plaintiff must establish jurisdiction as to every claim brought. *See Sunward Elecs., Inc.*, 362 F.3d at 24. Accordingly, the Court considers each category of Plaintiff's claims to determine whether Plaintiff has established the requisite showing of personal jurisdiction.[2] Ultimately, the Court determines that Plaintiff has established jurisdiction as to some, but not all, of its claims, and dismisses Plaintiff's trade secret misappropriation claims (Counts V and VI) for lack of personal jurisdiction.

### i.    Breach of Contract Claims

The Court begins by addressing Plaintiff's claims for breach of implied-in-fact contract (Count I) and breach of oral contract (Count II). As is the case for a claim for breach of a written contract, "to state a claim for breach of oral contract or breach of implied contract, a plaintiff must establish that a contract exists between the parties by alleging an offer, acceptance, consideration, mutual assent, and intent to be bound in the case of an oral contract, or consideration, mutual assent, legal capacity, and legal subject matter for an implied-in-fact contract." *Kindred Hosps. E., LLC* v. *Buffalo Bd. of Educ.*, No. 17 Civ. 851V (LJV) (SR), 2018 WL 9810848, at *9 (W.D.N.Y. Oct. 2, 2018), *report and recommendation adopted*, No. 17 Civ. 851 (LJV), 2020 WL 728436 (W.D.N.Y. Feb. 10, 2020) (citations omitted).

---

[2]    The Court does not address Count IV of the Complaint, which asserts a trade secret misappropriation claim pursuant to the California Uniform Trade Secrets Act, because Plaintiff has voluntarily agreed to drop this claim. (*See* Pl. Opp. 23 n.6).

Plaintiff argues most forcefully that jurisdiction exists for these claims pursuant to C.P.L.R. § 302(a)(1).  (Pl. Opp. 7).[3]  To establish jurisdiction pursuant to C.P.L.R. § 302(a)(1), two conditions must be met.  *First*, the defendant must "transact … business within the state or contract[ ] anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  *Second*, the cause of action must arise from "[a]cts which are the basis of jurisdiction."  *Id.* § 302(a).  This second condition requires a showing that the contacts with the state have a "substantial relationship" or an "articulable nexus" to the cause of action.  *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006); *see also Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Plaintiff argues that Defendant transacted business in this state because the key meeting between the parties took place in New York.  (Pl. Opp. 8).  Indeed, it is undisputed that the October 19, 2017 meeting, which required various members of Plaintiff's team to fly from California to New York, took place in Defendant's New York regional office.  (Compl. ¶ 14).  And it was during this meeting that Plaintiff's personnel allegedly presented Defendant with the pitch deck containing the prototypes for Plaintiff's product lines.  (*Id.* ¶ 15).  Moreover, during this meeting, Mr. Gelman allegedly refused to sign an

---

3       While Plaintiff cursorily cites C.P.L.R. § 302(a)(4) as an alternate basis for asserting jurisdiction over its claims, this argument is easily dismissed.  (*See* Pl. Opp. 7-8).  Under the plain language of C.P.L.R. § 302, specific jurisdiction only exists if "a cause of action *aris[es] from*" the ownership, use, or possession of real property in this state.  C.P.L.R. § 302(a) (emphasis added).  As Plaintiff's claims do not arise from ownership, use, or possession of real property, there is no basis for jurisdiction pursuant to § 302(a)(4).  *See, e.g.*, *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015); *Stroud* v. *Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015).

NDA, but maintained that the items discussed during the meeting were "entirely confidential." (*Id.* ¶ 16). In light of these facts, Plaintiff asserts that the October 19, 2017 meeting was more than just an exploratory meeting where the parties discussed the possibility of a future partnership. (Pl. Opp. 9-10). Rather, it was a seminal event whereby the parties reached an understanding that "if Starbucks attempted to use [Balmuccino's] product development to [Starbucks's] own advantage … that Balmuccino would be compensated for its product creation which was specific to Starbuck[s]'s coffee flavors." (*Id.*).

Defendant counters that this single meeting is insufficient to establish jurisdiction (*see* Def. Br. 15; Def. Reply 4-5), and it is true that "[c]ourts have been … skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties." *Three Five Compounds, Inc.* v. *Scram Techs., Inc.*, No. 11 Civ. 1616 (RJH), 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011) (internal quotation marks omitted) (quoting *Posven, C.A.* v. *Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398 (S.D.N.Y. 2004)); *see also Cooper, Robertson & Partners, LLP* v. *Vail*, 143 F. Supp. 2d 367, 372 (S.D.N.Y. 2001) ("Defendants are correct in noting that a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302(a)(1), especially when that meeting does not result in the execution of a contract.").

14

But the jurisdictional inquiry presented by Plaintiff's allegations is not as simple as Defendant suggests. While it is true that courts regularly decline to exercise jurisdiction based on a single meeting, courts in this District have also noted that visits to New York are not "jurisdictionally insignificant," and that "the location of a meeting where the terms of an allegedly breached contract are negotiated carries jurisdictional significance." *Three Five Compounds, Inc.*, 2011 WL 5838697, at *4 (internal quotation marks omitted) (first quoting *Cutco Industries, Inc.* v. *Naughton*, 806 F.2d 361, 367 (2d Cir. 1986), and then quoting *Premier Lending Servs., Inc.* v. *J.L.J. Assocs.*, 924 F. Supp. 13, 16-17 (S.D.N.Y. 1996)); *cf. Chalfin* v. *Go Big Solar, LLC*, No. 24 Civ. 4768 (KPF), 2025 WL 2022012, at *8 (S.D.N.Y. July 17, 2025) (collecting cases on both sides); *Narang* v. *Armour*, No. 24 Civ. 1125 (JPO), 2025 WL 1569644, at *8 (S.D.N.Y. June 3, 2025) (same).

Accordingly, to determine whether a single meeting in New York will give rise to personal jurisdiction, as asserted here, the court must evaluate the quality of the plaintiff's contacts with the state based on the totality of the circumstances. For instance, courts routinely find that meetings that occur in New York *subsequent* to the formation of the contractual relationship are not sufficient to confer jurisdiction, unless such meetings are "essential to the business relationship or at least substantially advance it." *Three Five Compounds, Inc.*, 2011 WL 5838697, at *4 (internal quotation marks omitted) (quoting *Kahn Lucas Lancaster, Inc.* v. *Lark Int'l Ltd.*, 956 F. Supp. 1131 (S.D.N.Y. 1997)); *see also U.S. Theatre Corp.* v. *Gunwyn/Lansburgh Ltd. P'ship*,

15

825 F. Supp. 594, 596 (S.D.N.Y. 1993) ("When the visit … is not for the purpose of initiating or forming a relationship, but is to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction.").

But courts *have* found jurisdiction when the meeting in question was significant to the development of a contractual relationship. *See, e.g., Geller* v. *Newell*, 602 F. Supp. 501, 503 (S.D.N.Y. 1984) (finding jurisdiction where defendant, during a one day visit to New York, negotiated and agreed in principle on a contract, but executed the contract later in Georgia); *Fabrikant & Sons, Inc.* v. *Khan, Inc.*, 533 N.Y.S.2d 866, 867-68 (1st Dep't 1988) (finding jurisdiction where defendant had a single meeting in New York followed by further business dealings outside the state); *see also Sandstone Springs, LLC* v. *Virag Distrib., LLC*, 617 F. Supp. 3d 159, 171 (W.D.N.Y. 2022) (discussing *Cooper* and *Fabrikant*). And as is the case when evaluating jurisdiction for any breach of contract claim, courts are guided by the several factors generally considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

16

*Sunward Elecs., Inc.*, 362 F.3d at 22-23 (internal quotation marks omitted) (quoting *Agency Rent A Car Sys., Inc.* v. *Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).  No single factor is dispositive, but rather the court's determination is based on the circumstances as a whole.  *Id.* at 23.

In this case, the Court finds that Defendant has had sufficient contacts with the forum state such that jurisdiction is appropriate.  While Plaintiff alleges only a single meeting between the parties as the basis for jurisdiction, it was in this meeting that the parties allegedly formed a contractual relationship. *See, e.g.*, *CutCo Indus.*, 806 F.2d at 367 (finding jurisdictional significance from meetings that were "instrumental" to defendant's decision to expand business with plaintiff); *NW Direct Design & Mfg., Inc.* v. *Glob. Brand Mktg., Inc.*, No. 98 Civ. 4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) ("[C]ontract negotiations occurring in New York are sufficient to support jurisdiction when they either 'substantially advanced' or were essential to the formation of a contract or if they resulted in a more sold business relationship between the parties."); *see also Topnotch Tennis Tours, LLC* v. *Glob. Tennis Connections Ltd.*, No. 13 Civ. 4844 (SLT) (VMS), 2014 WL 6389587, at *5 (E.D.N.Y. Nov. 14, 2014) (finding jurisdiction based on a "meeting and negotiations in New York" when the meeting "substantially advanced the business relationship and formation of the contract at issue").

Moreover, such a finding is seemingly supported by the decision of the trial court in the Washington Litigation.  There, when deciding the motion to

dismiss, Judge Chun noted, albeit in the context of a choice of law analysis, that the "place of contracting and place of negotiation of the contract" was neither Washington nor California, but New York. *Balmuccino III*, 2023 WL 4761447, at *5. Because this single meeting was sufficient to establish that Defendant transacted business in this state, and there is no dispute that Plaintiff's contract claims arise from this meeting, the Court finds jurisdiction is proper as to Count I and Count II of the Complaint.[4]

### ii.    Breach of Confidence Claim

The Court next addresses Plaintiff's claim for breach of confidence (Count III). To state a claim for a claim for breach of confidence, a plaintiff must allege: "(i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 385 (S.D.N.Y. 2024) (quoting *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239 (AMD) (SJB), 2022 WL 22248656, at *11 (E.D.N.Y. Mar. 15, 2022)). While the Court has doubts as to whether Plaintiff has successfully pleaded a breach of confidence claim, for many of the same

---

[4]    The Court pauses to note that many of Defendant's arguments as to why jurisdiction is lacking in this case speak to the merits of Plaintiff's claims, rather than the Court's jurisdiction. (*See, e.g.*, Def. Reply 8 (arguing that Plaintiff has not properly pleaded a breach of contract claim)). While the Court agrees that there are deficiencies in how Plaintiff has pleaded its breach of contract claims (some of which are discussed later in this Opinion), such deficiencies do not prevent this Court from asserting jurisdiction.

reasons previously discussed, *see supra* A.2.b.i, the Court finds that a sufficient showing has been made to establish jurisdiction over the claim.

Plaintiff's breach of confidence claim indisputably arises from the October 19, 2017 meeting in New York — a meeting that occurred because Plaintiff was invited to meet with a senior member of Defendant's team, at Defendant's corporate office, in this state.  (Compl. ¶ 14).  Moreover, it was the representations made at this meeting, including statements about the necessity of an NDA and the relationship between the parties, that Plaintiff alleges gave rise to the duty of confidentiality.  (*Id.* ¶ 48).  Because the Court has already established that a single meeting is sufficient, in this case, to establish that Defendant transacted business in this state, *see supra* A.2.b.i, and Plaintiff's claim clearly arises from this business, the Court has jurisdiction over Count III of the Complaint.

### iii.    Trade Secret Claims

Finally, the Court considers its jurisdiction over Plaintiff's state and federal trade secret misappropriation claims (Counts V and VI).  Plaintiff has brought claims pursuant to both New York's misappropriation law and the federal Defend Trade Secrets Act ("DTSA") (Compl. ¶¶ 78, 83) — the elements of which are "fundamentally the same."   *Better Holdco, Inc.* v. *Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 395 (S.D.N.Y. 2023) (internal quotation marks omitted) (quoting *Iacovacci* v. *Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020)); *see also id.* at 384 (explaining that the DTSA and New York misappropriation law both require proof that (i) a plaintiff possessed a trade

19

secret and that (ii) the defendant misappropriated it).  While Plaintiff once again argues that jurisdiction exists for these claims pursuant to C.P.L.R. § 302(a)(1), Defendant has put forth two bases for challenging jurisdiction, one of which succeeds.

*First*, Defendant argues that it did not "transact business" within the state under prong one of § 302(a)(1)'s test because the meeting that took place in New York was only an "exploratory meeting[ ]" subject to "further negotiations."  (Def. Br. 11 (internal quotation marks omitted) (quoting *V Cars, LLC* v. *Israel Corp.*, 902 F. Supp. 2d 349, 361 (S.D.N.Y. 2012))).  Such an argument is easily dismissed, as the Court has already established that Defendant transacted business in New York.  *See supra* A.2.b.i.  *Second,* Defendant posits that even if it transacted business in New York, there is no jurisdiction under prong two because the alleged misappropriation occurred outside of this forum.  (Def. Br. 11-12).  The Court finds this argument meritorious, and agrees with Defendant that Plaintiff's trade secret claims do not arise from its contacts with this state.

In reaching this conclusion, the Court aligns itself with several other courts, which have "uniformly held that jurisdiction will not lie under § 302(a)(1) where contract negotiations were held in New York, but the alleged misappropriation of intellectual property occurred after either the contract negotiations broke down or the contract was breached."  *Interface Biomedical Lab'ys Corp.* v. *Axiom Med., Inc.*, 600 F. Supp. 731, 737 (E.D.N.Y. 1985) (citing *Am. White Cross Lab'ys, Inc.* v. *H.M. Cote, Inc.*, 556 F. Supp. 753, 759 (S.D.N.Y.

1983); *Xedit Corp.* v. *Harvel Indus. Corp.*, 456 F. Supp. 725, 729 (S.D.N.Y.

1978); *Sterling Television Presentations* v. *Shintron Co.*, 454 F. Supp. 183, 188

(S.D.N.Y. 1978)); *see also Helio Logistics, Inc.* v. *Mehta*, No. 22 Civ. 10047

(NSR), 2023 WL 21887, at *8-9 (S.D.N.Y. Jan. 3, 2023).

Indeed, courts in this Circuit have held "that preliminary negotiations

that supported jurisdiction over a breach of contract claim were insufficient to

support jurisdiction on the plaintiffs' misappropriation of trade secrets claims."

*SAS Grp.*, 245 F. Supp. 2d at 550; *see also Sterling Television,* 454 F. Supp. at

188 (rejecting the argument that § 302(a)(1) provided a basis for personal

jurisdiction over misappropriation claims because "[c]learly the unauthorized

use occurred and the cause of action arose … in Massachusetts" rather than

New York); *cf. Pictometry Int'l Corp.* v. *Air Am. Flight Ctr., LLC,* 394 F. Supp. 3d

320, 333-34 (W.D.N.Y. 2019) (finding personal jurisdiction where "there were

allegedly ongoing contacts with New York *after* the misappropriation in which

the wrongfully obtained information was used" (emphasis added)).

The Court finds similarly here, based on the particular facts of this case.

As noted by Defendant, the alleged misappropriation occurred (if at all) over a

year after the New York meeting, when Plaintiff learned that Defendant

allegedly contacted one of its suppliers.  (Def. Br. 12).  And there are no

allegations that tie the acts of misappropriation, beyond the discussed meeting

in New York, to this forum.  (*Id.*).  "Where, as here, the New York meeting[ ] did

not cause or further the alleged misappropriation of intellectual property rights

'except to the extent that it was a link in the chain of events leading to the

21

claim for which relief is sought,' the misappropriation claim[s] … cannot be said to arise from transactions of business in New York." *Interface Biomedical Lab'ys Corp.*, 600 F. Supp. at 737 (quoting *Xedit Corp.*, 456 F. Supp. at 729).

Moreover, the Court notes that there is also no basis for asserting jurisdiction pursuant to C.P.L.R. § 302(a)(2) or § 302(a)(3).  Section 302(a)(2) permits a court to exercise jurisdiction over a non-domiciliary who "in person or through an agent … commits a tortious act within the state."  When a complaint asserts claims of trade misappropriation, the "[m]isappropriation is deemed to occur where the merchandise at issue is manufactured." *Acoustical Design, Inc.* v. *Control Elecs. Co.*, No. 86 Civ. 1692 (JMM), 1987 WL 8066, at *4 n.7 (E.D.N.Y. Feb. 24, 1987).

As discussed above, there are no allegations that Defendant's Sip Kit was manufactured or designed in this state.  (*See generally* Compl.).  Indeed, the Complaint is generally devoid of allegations tying the Sip Kit to this forum, as it is nowhere alleged that Defendant developed, launched, or sold this product in New York.  (*See generally id.*).  While Plaintiff attempts to argue in its briefing that Defendant committed a tortious act in this state, when doing so, Plaintiff merely states that Defendant's promotion "reached the New York market" and that Defendant generally "has a very significant presence in New York."  (Pl. Opp. 9).  Such threadbare assertions are insufficient to establish jurisdiction pursuant to § 302(a)(2). *See, e.g.*, *DirecTV Latin Am., LLC* v. *Park 610, LLC*, 691 F. Supp. 2d 405, 418 (S.D.N.Y. 2010) ("New York courts and the Second Circuit have 'consistently interpreted § 302(a)(2) jurisdiction narrowly' and have held

that 'to qualify for jurisdiction under this subsection, a defendant's act or omission [must have] occur[red] within the State." (internal citations omitted) (alterations in original) (first quoting *Carlson* v. *Cuevas*, 932 F. Supp. 76, 79 (S.D.N.Y. 1996), and then quoting *Bank Brussels Lambert*, 171 F.3d at 789-90)).

Section 302(a)(3) allows for a nondomiciliary who "commits a tortious act without the state causing injury … within the state" to be brought to New York to answer for their conduct.  In order to establish jurisdiction under this provision, "a plaintiff seeking to establish jurisdiction [must] demonstrate that 'the tortious act [complained of] caused an injury to a person or property' in the state and that 'the defendant expected or should reasonably have expected that his or her action would have consequences in New York.'"  *JCorps Int'l, Inc.* v. *Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 743 (2d Cir. 2020) (summary order) (first alteration in original) (quoting *Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)).

Plaintiff fails to establish jurisdiction under this provision because it fails to allege any New York-based harm resulting from Defendant's conduct. Moreover, while Plaintiff alleges that it disclosed trade secrets in New York, it has provided no cases suggesting that disclosure of a trade secret, without more, is sufficient to establish injury pursuant to § 302(a)(3).  *See JCorps Int'l*, 828 F. App'x at 744 (finding that a plaintiff failed to establish jurisdiction pursuant to § 302(a)(3) when plaintiff did not show that defendants "used [the alleged] stolen information in New York"); *Darby Trading Inc.* v. *Shell Int'l*

*Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 338 (S.D.N.Y. 2008) (dismissing a claim for lack of personal jurisdiction because plaintiff failed to allege an injury in the form of loss of New York sales or New York-based customers). Accordingly, there is no basis to assert jurisdiction over Plaintiff's trade secret misappropriation claims, and these claims must be dismissed.

### iv.    Due Process Considerations

Having found jurisdiction as to some of Plaintiff's claims under New York's long-arm statute, the Court next turns to the Due Process Clause. As the Second Circuit has suggested, it is the rare case where the exercise of personal jurisdiction pursuant to C.P.L.R. § 302(a)(1) is nevertheless unconstitutional pursuant to the Due Process Clause. *See, e.g.*, *Spetner* v. *Pal. Inv. Bank*, 70 F.4th 632, 645 (2d Cir. 2023) ("Historically, when we have found § 302(a)'s requirements satisfied based on an agent's contacts with the forum, we have not suggested that due process requires something more than New York law."); *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) ("*Licci IV*") (noting that while § 302(a)(1) is "not coextensive" with the due process clause, a case would be "rare" in which contacts satisfy the statute yet fail to comport with due process). Nevertheless, the Court must independently ensure that the constitutional requirements are satisfied.

The due process analysis proceeds in two steps. *First*, "[t]o exercise specific personal jurisdiction over a corporate defendant that is not incorporated in or primarily doing business in the State, a court must first determine that a corporate defendant's in-state acts reflect its 'purposeful

24

availment' of opportunities within the State, and that the asserted claims arise out of or relate to its contacts with the State." *Lelchook* v. *Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226, 239 (2d Cir. 2025) (quoting *Ford Motor Co.*, 592 U.S. at 359). *Second*, the court must find that "[t]he exercise of jurisdiction in the State as to the related claims over the defendant [is] 'reasonable' — that is, consistent with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Licci IV*, 732 F.3d at 169-70, 174); *see also Charles Schwab Corp.*, 883 F.3d at 82.

To begin, Plaintiff has made a sufficient showing that the first prong of the due process analysis is satisfied because its claims arise out of Defendant's purposeful contacts with New York. As previously discussed, Defendant directed activities toward New York by engaging in a significant business meeting in this state, which allegedly resulted in a contractual relationship. *See supra* A.2.b.i. Moreover, Plaintiff's breach of contract and breach of confidence claims arise from these activities. *Id.* Accordingly, "[f]or the same reasons that [the defendant's] engagement with New York satisfies § 302(a)(1), it also satisfies the minimum contacts requirement." *Am. Girl, LLC* v. *Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024); *see also Cyberscan Tech., Inc.* v. *Sema Ltd.*, No. 06 Civ. 526 (GEL), 2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) (noting that "[s]atisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements" (internal quotation marks omitted) (quoting *Kelly* v. *MD Buyline, Inc.*, 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998))). Indeed, because Defendant purposefully availed itself of the privilege of doing business in New

25

York, it should have "reasonably anticipated being haled into court [ ]here."

*Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation

marks omitted) (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S.

286, 297 (1980)).

Next, the Court must determine whether the exercise of personal

jurisdiction is reasonable under the Due Process Clause.  To do so, the Court

considers the following factors:

> [i] the burden that the exercise of jurisdiction will
> impose on the defendant; [ii] the interests of the forum
> state in adjudicating the case; [iii] the plaintiff's interest
> in obtaining convenient and effective relief; [iv] the
> interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and [v] the
> shared interest of the states in furthering substantive
> social policies.

*Peterson* v. *Bank Markazi*, 121 F.4th 983, 1006 (2d Cir. 2024) (internal

quotation marks omitted) (quoting *In re Platinum & Palladium Antitrust Litig.*,

61 F.4th 242, 273 (2d Cir. 2023)).  Defendant largely argues that the exercise

of personal jurisdiction is unreasonable under the first prong because neither

party resides in New York, the sole connection to New York is a pitch meeting

that did not result in an ongoing relationship, and it would be burdensome for

Defendant to litigate in New York as many prospective witnesses are located

elsewhere.  (Def. Br. 16).

But "in this modern era, the first prong is largely disregarded with

respect to solvent corporate defendants."  *State Farm Fire & Cas. Co.* v. *Swizz*

*Style, Inc.*, 246 F. Supp. 3d 880, 894 (S.D.N.Y. 2017).  Indeed, the burden on

corporate defendants is eased by "the conveniences of modern communication

and transportation." *Licci IV*, 732 F.3d at 174 (internal quotation marks omitted) (quoting *Metro. Life Ins. Co*, 84 F.3d at 574).  Such is the case here, especially when considering that Defendant maintains a regional office in this state.

Moreover, prong two strongly weighs in favor of the exercise of jurisdiction, because the acts that serve as the basis of Plaintiff's breach of contract and breach of confidence claims occurred in New York.  *See Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002) (finding that, "as the center" of several actions giving rise to the dispute, New York had an interest in adjudicating the plaintiff's claim).  Because Defendant has failed to show a "compelling case that the presence of some other considerations would render jurisdiction unreasonable," the Court finds the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  *Burger King*, 471 U.S. at 477.  Accordingly, the Court concludes that it is constitutionally appropriate to exercise personal jurisdiction over Defendant with respect to Counts I through III of the Complaint.

## B.    The Court Grants Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)

### 1.    Applicable Law

Having found jurisdiction to consider certain of Plaintiff's claims, the Court turns to the merits of these claims.  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [p]laintiff['s] favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While [*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007)] does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).

### 2.    This Action Is Barred by *Res Judicata*

While Defendant proffers several bases for dismissal, the Court begins by addressing a threshold issue: whether the instant litigation is barred by *res judicata*, also known as claim preclusion.  *See generally Weir* v. *Montefiore Med. Ctr.*, No. 23 Civ. 4468 (KPF), 2023 WL 5747642 (S.D.N.Y. Sept. 6, 2023) (discussing and distinguishing claim and issue preclusion), *reconsideration denied*, No. 23 Civ. 4468 (KPF), 2024 WL 2049411 (S.D.N.Y. May 6, 2024), *and aff'd,* No. 24-1527, 2025 WL 289497 (2d Cir. Jan. 24, 2025) (summary order). Specifically, Defendant argues this litigation is entirely barred by the dismissal decision in the Washington Litigation, which decision was later affirmed by the Ninth Circuit.  (Def. Br. 17-23).

The doctrine of "[*r*]*es judicata* evokes the common law principles of judicial economy and comity."  *Channer* v. *Dep't of Homeland Sec.*, 527 F.3d

275, 279 (2d Cir. 2008).  "[I]t provides that a final judgment bars a subsequent action between the same parties over the same cause of action."  *Id.*  Notably, issues of *res judicata* and collateral estoppel may be properly decided on a motion to dismiss under Rule 12(b)(6).  *Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *4 (S.D.N.Y. June 26, 2015) (citing *Cameron* v. *Church*, 253 F. Supp. 2d 611, 617-24 (S.D.N.Y. 2003)); *see also Thompson* v. *Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("As an initial matter, we note that the doctrine of *res judicata* or issue preclusion in no way implicates jurisdiction.  *Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." (citations omitted));  *Salahuddin* v. *Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam) (affirming dismissal of claims under Rule 12(b)(6) on grounds of *res judicata*).

### a.  Washington Law Governs the Application of *Res Judicata*

When bringing suit in the Western District of Washington, Plaintiff asserted that the district court there had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) "because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the Plaintiff and all its members are citizens of a State different from Defendant."  (Diakos Decl., Ex. 11 ¶ 3).  *See also Balmuccino III*, 2023 WL 4761447, at *3 (applying the legal standards for a federal court sitting in diversity).  Accordingly, to determine the preclusive effect of the ruling of the Western District of Washington, the Court must follow the Supreme Court's guidance as articulated in *Semtek International, Inc.* v. *Lockheed Martin Corp.*, 531 U.S. 497 (2001).

29

In *Semtek*, the petitioner initially filed suit in California state court, alleging breach of contract and other state law claims.  531 U.S. at 499.  After the case was removed to a federal court in California based on diversity jurisdiction, petitioner's claims were dismissed (and the dismissal was affirmed by the appellate court) because petitioner's claims were barred by California's two-year statute of limitations.  *Id.*  Thereafter, the petitioner filed a second lawsuit, based on the same claims, in Maryland state court, where there was a longer, three-year statute of limitations.  *Id.*  The Maryland state court ultimately dismissed the petitioner's claims after determining that the California federal court's prior dismissal of the suit had a preclusive effect on the second suit.  *Id.* at 500.

The Supreme Court reversed and remanded, finding that the Maryland court misapplied federal law when determining the preclusive effect of the prior action.  531 U.S. at 508-09.  In doing so, the Supreme Court explained that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity."  *Id.* at 508.  However, federal law requires the application of "the law that would be applied by state courts in the State in which the federal diversity court sits."  *Id.*; *see also Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010); *In re Mirena IUD Prods. Liab. Litig.*, No. 13 MD 2434 (CS), 2015 WL 5037100, at *4 (S.D.N.Y. Aug. 26, 2015) ("The rule ultimately prescribed by *Semtek* … is that the second court's determination of the preclusive effect of a federal diversity court's judgment requires application of the claim preclusion rules of the state that

provided the rules of law in the first action.").  Accordingly, *Semtek* requires that this Court apply Washington law to determine the preclusive effect of the Washington Litigation.

>  **b.**    **The Instant Action Is Precluded Under Washington Law**

Under Washington law, *res judicata* applies only to a "valid and final judgment on the merits in the prior suit."  *Ensley* v. *Pitcher*, 222 P.3d 99, 103 (Wash. App. 2009) (citing *Hisle* v. *Todd Pac. Shipyards Corp.*, 93 P.3d 108, 114 (Wash. 2004)).  Assuming there is a final judgment on the merits, to determine whether *res judicata* applies, Washington courts apply a four-part test.  *Carter* v. *MultiCare Health Sys.*, 553 P.3d 98, 107 (Wash. Ct. App. 2024).  Under this test, a "judgment will have preclusive effect only if there is identity between the prior judgment and the subsequent action with respect to [i] persons and parties; [ii] causes of actions; [iii] subject matter; and [iv] the quality of persons for or against whom the claim was made."  *Zweber* v. *State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1166 (W.D. Wash. 2014) (citing *Karlberg* v. *Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012)).

Here, the parties do not dispute that the aforementioned factors would support a finding of *res judicata* — the persons involved in the litigations, the subject matter, and the nature of the claims are identical.  Rather, the parties dispute the threshold question of whether the decision of the Western District of Washington was a final decision on the merits.  Ultimately, the Court finds that it was.

Plaintiff argues that the Western District of Washington's decision was not on the merits because the case was dismissed based on limitations grounds. In support, Plaintiff relies upon *Cloverleaf Realty of New York, Inc.* v. *Town of Wawayanda*, where the Second Circuit held that under New York law, the dismissal of a claim for lack of timeliness is not a judgment on the merits. (Pl. Opp. 18 (citing 572 F.3d 93 (2d Cir. 2009))). However, as already discussed, this Court must apply Washington — rather than New York — law when making a *res judicata* determination, and therefore Plaintiff's reliance on *Cloverleaf* is misplaced. *See Harrison* v. *Diamonds*, No. 14 Civ. 484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) ("A federal court sitting in diversity jurisdiction determines the preclusive effect to be given a prior judgment by applying the *res judicata* law of the state in which the court that entered the prior judgment sat." (citing *Semtek*, 531 U.S. at 508)).

Instead, the Court must follow the guidance provided by Washington courts, which have found that "a dismissal on statute of limitations grounds can be treated as a dismissal on the merits" for *res judicata* purposes. *Campbell* v. *Fernandez*, 473 P.3d 675, 679 n.4 (Wash. Ct. App. 2020) (quoting *In Re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999)); *see also Evans* v. *Heimann*, No. C18-5473 (MJP), 2022 WL 101953, at *1 (W.D. Wash. Jan. 11, 2022) (explaining that a dismissal on statute of limitations grounds is a dismissal on the merits under Washington law); *Goulsby* v. *Waddington*, No. C07-5139 (RBL) (KLS), 2008 WL 2996999, at *4-5 (W.D. Wash. Aug. 1, 2008) (rejecting the

argument that a dismissal based on "statute of limitations grounds" was not a "final judgment on the merits").

As Defendant points out, the Washington Court of Appeals case of *Campbell* v. *Fernandez*, 473 P.3d 675, is particularly instructive on this issue. (*See* Def. Br. 19-20).  In that case, the plaintiffs had filed an initial action, but failed to serve the defendant prior to the expiration of the statute of limitations. 473 P.3d at 676.  Accordingly, the plaintiffs filed a second "protective action," through which they sought to "obtain additional time … within which to accomplish effective service."  *Id.*  But while the protective action was properly filed, the plaintiffs did not disclose the existence of the protective action to the first court, and the first court dismissed the first action, with prejudice, on statute of limitations grounds.  *Id.*  This caused the second court to dismiss the protective action as barred by *res judicata.*  *Id.*  The plaintiffs appealed the decision of the trial court in the protective action, but the Washington Court of Appeals affirmed the trial court's dismissal.  The court reasoned that because the plaintiffs "did not disclose their protective action as a defense to dismissal on statute of limitations grounds, the trial court properly dismissed with prejudice."  *Id.* at 679.

As in *Campbell*, the Western District of Washington dismissed Plaintiff's claims on statute of limitations grounds with prejudice.  *Balmuccino III,* 2023 WL 4761447, at *10 (denying leave to amend and dismissing the case with prejudice because "Balmuccino has repeatedly failed to cure deficiencies in its complaint and Starbucks has experienced prejudice based on Balmuccino's

33

undue delays"). Plaintiff has proffered no basis for believing that Washington law mandates that this case be treated different than *Campbell*. Moreover, Plaintiff does not dispute that the remaining elements of the *res judicata* analysis under Washington law are met. (*See generally* Pl. Opp.). Accordingly, because pursuant to Washington law, the Washington Litigation resulted in a dismissal on the merits, the current action is barred by the principles of *res judicata*.

### 3. Collateral Estoppel Applies to the Western District of Washington's Choice-of-Law Determination

Even if the claims in this case were not barred by *res judicata*, which they are, principles of collateral estoppel would prevent Plaintiff from arguing that New York, rather than Washington law, applies to this dispute. Collateral estoppel, also referred to as issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather* v. *Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Schiro* v. *Farley*, 510 U.S. 222, 232 (1994)). Collateral estoppel applies "when an issue was necessarily and conclusively determined in a prior proceeding and the party to be bound had a full and fair opportunity to litigate the issue." *Sassower* v. *Abrams*, 833 F. Supp. 253, 264-65 (S.D.N.Y. 1993).

Notably, collateral estoppel, like *res judicata*, "can be raised and considered via a pretrial motion to dismiss." *HBP Assocs.* v. *Marsh*, 893 F. Supp. 271, 276 (S.D.N.Y. 1995). And as is the case when analyzing a decision

34

for the purposes of *res judicata*, "[w]here a decision 'claimed to have preclusive effect was rendered by a district court sitting in diversity, [a federal court] will apply the preclusion law that would be applied by the state courts in the State in which the federal diversity court sits.'" *Rafter* v. *Liddle*, 704 F. Supp. 2d 370, 374-75 (S.D.N.Y. 2010) (alteration in original) (quoting *Algonquin Power Income Fund* v. *Christine Falls of N.Y., Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010) (summary order)).  Accordingly, this Court analyzes the preclusive effect of the Washington Litigation by applying the laws of the state of Washington.

Under Washington law, collateral estoppel is appropriate when four factors are present: "[i] the issue decided in the earlier proceeding [is] identical to the issue presented in the later proceeding, [ii] the earlier proceeding ended in a judgment on the merits, [iii] the party against whom collateral estoppel is asserted [is] a party to, or in privity with a party to, the earlier proceeding, and [iv] application of collateral estoppel [will] not work an injustice on the party against whom it is applied." *Plancich* v. *County of Skagit*, 147 F. Supp. 3d 1158, 1163 (W.D. Wash. 2015) (quoting *Christensen* v. *Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 961 (Wash. 2004)).

Beginning with the first factor, the issue of which state's law governs Plaintiff's claims is identical to that presented to the Western District of Washington and, subsequently, the Ninth Circuit.  In the Washington Litigation, the parties disputed (and fully briefed) which state's laws governed Plaintiff's claims.  Indeed, Plaintiff forcefully argued there that the "significant relations test" — the test used by Washington courts to resolve choice of law

questions when there is an actual conflict between the laws of the interested states — "favor[ed] a finding that California law [rather than Washington law] applies" to Plaintiff's contract and tort claims. (Diakos Decl., Ex. 13 at 9-11 ("[California] is … where the relationship with the parties developed and where all communications with Balmuccino occurred, with the one exception of the New York meeting.")).

Ultimately, both the Western District of Washington and the Ninth Circuit disagreed, and determined that Washington law applied to Plaintiff's claims. *See Balmuccino III*, 2023 WL 4761447, at *3-6 ("Washington law applies because Balmuccino has not shown that California bears a more significant relationship to its contract and tort claims."); *Balmuccino IV*, 2024 WL 4262805, at *2 ("[T]he most significant relationship test favors applying Washington law."). This determination was a necessary element of the courts' decisions, as the Washington Litigation was dismissed only after finding that Plaintiff's claims were time-barred under Washington law.

The first factor further weighs in Defendant's favor because "Washington courts … apply the same 'most significant relationship test' applied by New York courts" to determine the appropriate law governing contract claims. *Newmont USA Ltd.* v. *Am. Home Assurance Co.*, No. CV-09-033 (JLQ), 2010 WL 11508326, at *3 (E.D. Wash. July 27, 2010). Accordingly, Plaintiff merely asks this Court to conduct the same analysis done by the Western District of Washington and Ninth Circuit, but reach a different (more favorable) outcome.

The Court declines to do so.  During the course of the Washington Litigation, the Western District of Washington noted a plausible connection between this case and New York, and nevertheless determined that Washington law applied to the case.  *See Balmuccino III*, 2023 WL 4761447, at *5-6. Indeed, the Ninth Circuit noted that the "place of contracting and place of negotiation were both in New York where the pitch meeting occurred." *Balmuccino IV*, 2024 WL 4262805, at *2.  Even so, the Ninth Circuit found that Washington law applied because "the place of performance" and "the location of the subject matter of the contract" were in Washington.  *Id.* at *1-2.  The Ninth Circuit also found that the tort contact analysis "favors applying Washington law" because "Starbucks's alleged misappropriation occurred in Washington." *Id.* at *2.

The second and third factors of the collateral estoppel analysis easily favor Defendant.  This Court has already determined that the decision of the Western District of Washington was a final decision on the merits.  *See supra* B.2.b.  And there is no dispute that the parties in this litigation are identical to those in the prior litigation.  Accordingly, the remainder of the Court's analysis focuses on the fourth factor, *viz.*, whether the application of collateral estoppel would work an injustice against Plaintiff.

Plaintiff argues that the application of collateral estoppel is inappropriate here because it has not had the opportunity to conduct discovery and explore the "substance of the case."  (Pl. Opp. 18-20).  The Court disagrees with Plaintiff's characterization.  Plaintiff did indeed have a full and fair opportunity

to litigate which state's law should apply to its claims — and it made the strategic (although ultimately unsuccessful) decision to argue that California law governed. While Plaintiff might have chosen a different litigation strategy in hindsight, there is no injustice in adhering to the thoughtful determinations of a sister court.

More fundamentally, collateral estoppel exists for circumstances such as these, as the doctrine intended to "avoid duplicative and costly litigation, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication." *United States* v. *WB/Stellar IP Owner LLC*, 800 F. Supp. 2d 496, 505 (S.D.N.Y. 2011), *aff'd sub nom. United States* v. *Glenn Gardens Assocs., L.P.*, 534 F. App'x 17 (2d Cir. 2013) (summary order). Because collateral estoppel precludes Plaintiff from arguing that New York law applies to its remaining claims, its claims are barred under Washington law, and this action must be dismissed.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss the Complaint is hereby GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     September 22, 2025
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

38